# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-1082V
### Filed: August 15, 2022

* * * * * * * * * * * * * * * * * * * * * * *
ADRIENNE FALZON, as legal
representative of and administrator of
ESTATE OF PAUL GIACCIO,

                    Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                    Respondent.
* * * * * * * * * * * * * * * * * * * * * * *

TO BE PUBLISHED

Special Master Katherine E. Oler

Dismissal of Petition; Timeliness of
Filing; Equitable Tolling; Vaccine Act.

*David Gregory Rogers,* Rogers, Hofrichter & Karrh, LLC, Fayetteville, GA, for Petitioner
*Voris Johnson,* U.S. Department of Justice, Washington, DC, for Respondent

## DECISION DISMISSING PETITION[1]

On March 18, 2021, Adrienne Falzon ("Petitioner" and mother of Mr. Paul Giaccio), as legal representative of and administrator of the Estate of Paul Giaccio, filed a petition for compensation under the National Vaccine Injury Compensation Program,[2] alleging that Paul Giaccio ("vaccinee") died from sepsis related to streptococcal necrotizing myositis that was caused or exacerbated Mr. Giaccio's infection, as a result of the influenza ("flu") vaccination he received

---

[1] This Decision will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

on November 13, 2018. Pet. at 1-2. For the reasons discussed in this decision, I find the petition must be dismissed because it was filed more than 24 months after Mr. Giaccio's death.

### I.  Summary of Medical Records and Other Fact Evidence

I have provided a brief medical summary concerning the details relevant to the statute of limitations issue in this case.

Mr. Giaccio was 43 years old at the time of the allegedly causal influenza vaccination. Ex. 1; Ex. 2 at 13. On November 13, 2018, Mr. Giaccio saw PA Margaret Renn Freuchtel for a routine check up and reported a number of symptoms including left shoulder pain and back pain that decreased his range of motion ("ROM") for the past several months and led to his inability to sleep on his left side. Ex. 2 at 13. Mr. Giaccio was diagnosed with acute pain of the left shoulder. *Id.* at 15. He received the influenza vaccine during this visit. *Id.*

On November 16, 2018, Mr. Giaccio returned to his PCP and stated that since he received the flu shot three days prior in his left arm, he had been experiencing right shoulder pain that was in his right upper back down to his shoulder and into his armpit region. Ex. 2 at 11. He also reported increased fatigue and a headache. *Id.* Mr. Giaccio was diagnosed with trapezius muscle spasms, prescribed NSAIDs and a muscle relaxer. *Id.* at 12. PA Margaret Renn Freuchtel advised Mr. Giaccio to retain his orthopedic appointment because his presentation of right shoulder pain was "unlikely [] due to flu shot in left arm." *Id.*

On November 18, 2018, Marquis Foster, Mr. Giaccio's roommate, found Mr. Giaccio unresponsive in the bathroom. *See* Cobb County Office of the Medical Examiner Investigator's Report (Ex. 3) at 19. Mr. Foster called 911 and began CPR. *Id.* Cobb County uniformed officers and firefighters responded to the scene. *Id.* Mr. Giaccio did not have any vital signs. *Id.* He was pronounced dead at 1:52am on November 19, 2018. *Id.*

Pathologist Cassie Boggs, M.D. performed an autopsy on November 20, 2018. Ex. 3 at 3. Her pathological diagnoses included: necrosis and acute inflammation of the right pectoralis muscle; pleuritis of the right chest cavity with pneumonia of right lung; myocardial necrosis; softening with prominence of white pulp of spleen; hemorrhagic change of adrenal glands; diffusely enlarged lymph nodes; pulmonary congestion and edema; and cerebral edema. *Id*. Dr. Boggs identified Mr. Giaccio's cause of death as "sepsis due to Group A streptococcal necrotizing myositis." *Id.*

### II.  Procedural History

On March 18, 2021, Ms. Falzon ("Petitioner") filed a petition as legal representative and administrator of the Estate of Paul Giaccio. Pet. Petitioner filed a number of exhibits, including Mr. Giaccio's birth certificate, Mr. Giaccio's medical records preceding his death, Mr. Giaccio's autopsy report, a piece of medical literature regarding streptococcal necrotizing myositis, and Ms. Falzon's affidavit. *See* Exs. 1-5. On June 11, 2021 and January 7, 2022, Petitioner filed statements of completion. ECF Nos. 8, 13.

On April 15, 2022, Petitioner filed a motion for an extension of time to obtain probate documents. ECF No. 18. I granted that request the same day. *See* non-PDF Order on April 15, 2022.[3]

On April 18, 2022, Respondent filed a status report stating he did not identify any "critical missing records" and wished to proceed on a litigation track. ECF No. 19.

On May 19, 2022, Respondent filed a Rule 4(c) Report stating it was his position that this case was not appropriate for compensation under the Vaccine Act. Resp't's Rep. at 1-2. In this report, Respondent noted that this case should be dismissed because the petition was not timely filed, Mr. Giaccio cannot meet the severity requirement for an injury claim, and the evidence submitted did not support vaccine-causation. *See generally id.* Specifically, Respondent noted that Mr. Giaccio passed away on November 19, 2018 and the petition was filed more than 24 months after his death. *Id.* at 6. According to Section 16 of the Vaccine Act, a petition must be filed "24 months from the date of the death and no . . . more than 48 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of the injury from which the death resulted." *See id.*; *see also* 42 U.S.C. § 300aa-16(a)(3).

On May 23, 2022, I held a status conference with the parties to discuss Respondent's Rule 4(c) Report and concerns regarding the statute of limitations. Petitioner requested 30 days to file a brief regarding the statute of limitations issue and Respondent requested 14 days to file a response. *See* Scheduling Order dated May 23, 2022, ECF No. 24. I granted those requests. *Id.*

On June 22, 2022, Petitioner filed a brief regarding the statute of limitations. ECF No. 25. On July 5, 2022, Respondent filed a response to Petitioner's brief. ECF No. 26. This matter is now ripe for a determination concerning whether Petitioner's claim is time barred.

## III. Parties' Arguments

Petitioner argues "the Covid 19 pandemic, the worst pandemic in over 100 years, created the circumstances that caused litigant's delay, that were both extraordinary and beyond Petitioner's control." Pet'r's Br. at 11. Accordingly, Petitioner argues that equitable tolling renders her petition timely filed. Petitioner cited *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) and *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). These cases establish that for equitable tolling to apply, matters must be beyond the litigant's control, and that the litigant must have acted diligently in pursuing their rights during the extraordinary circumstances. *See also Menominee Indian Tribe v. United States*, 577 U.S. 250, 257 (2016).

---

[3] As of the date of this decision, Petitioner has not filed probate documents demonstrating that she (or someone else) is the administrator of Mr. Giaccio's estate. In her motion for extension of time, Petitioner states that "There has been considerable controversy in the handling of the estate, with the first administrator Althea Caces being removed by the Probate Court, and replaced by Hillary Cranford, esq." ECF No. 18. On May 16, 2021, Petitioner filed documents entitled "Amended Petition" and "Probate Documentation". ECF Nos. 20, 22. However, none of the information filed establishes that Ms. Cranford was appointed as the executor of Mr. Giaccio's estate. As this matter does not prevent me from deciding whether Petitioner's claim was time barred, I have not ordered the production of additional documentation.

Petitioner argues that the doctrine of equitable tolling applies in the case of her counsel's delay in submitting the petition. Addressing the second prong of the *Irwin* test, Petitioner charges that the illness and death of counsel's father, counsel's own health issues, and illness experienced by other staff members in counsel's law office and by Petitioner's expert, were sufficient extraordinary circumstances to justify equitable tolling. *See generally* Pet'r's Br.; *see also* Aff. of David Gregory Rogers. In particular, she emphasizes that the unique scale and severity of the COVID-19 pandemic were "extraordinary", citing public health data for case incidence in Georgia to support her argument. Pet'r's Br. at 1, 18. Addressing the first prong, Petitioner claims that her counsel diligently pursued his charge of filing the case given the extraordinary circumstances he faced, pointing to intermittent emails and calls made between counsel and Dr. Stern on September 18, October 8, October 9, October 27, and November 4, 2020 despite the circumstances. *Id.* at 14-15.

Respondent argues that the doctrine of equitable tolling does not apply to Petitioner's delay in filing her claim. Respondent notes that Petitioner does not cite any legal authority to support her argument that the COVID-19 pandemic was an extraordinary circumstance for the purposes of equitable tolling, and Respondent points to court guidelines issued since the beginning of the pandemic and electronic filing procedures that enable regular filings to occur despite the pandemic. Resp't's Br. at 5. Respondent charges that the pandemic therefore was not an event outside of Petitioner's control, but rather that the events described were counsel's responses to challenges posed by the pandemic and personal situation, and they were actions within counsel's control. *Id.* at 6. Respondent also notes that Petitioner's counsel was not completely absent from the office during the period of alleged extraordinary circumstances, and that Petitioner's counsel was in fact working on matters for other clients and even Petitioner's case to an extent, as evidenced by the email and phone communications between Petitioner's counsel and Dr. Stern. *Id.*

### IV.  Legal Standard

The statute of limitations, or the timeframe within which a person who has sustained a vaccine-related injury must file a claim, is outlined in § 16(a)(3) of the Vaccine Act:

> [I]f a death occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such death after the expiration of 24 months from the date of the death and no such petition may be filed more than 48 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of the injury from which the death resulted.

42 U.S.C. § 300aa-16(a)(3).

In *Cloer,* the United States Court of Appeals for the Federal Circuit recognized that equitable tolling, an extension of the statute of limitations, can be applied in vaccine cases under very rare and extraordinary circumstances, for example, those involving fraud or duress. *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1334-35 (Fed. Cir. 2011). The *Cloer* court also cited to *Irwin v. Department of Veterans Affairs*, noting that "equitable tolling is to be used 'sparingly' in federal cases and has been limited to cases involving deception or the timely filing of a procedurally defective pleading". 498 U.S. 89 (1990).

4

In *Menominee Indian Tribe of Wisconsin*, the Supreme Court noted, "To be entitled to equitable tolling of a statute of limitations, a litigant must establish '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 136 S.Ct. 750, 755 (2016); *citing Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130. In order to constitute extraordinary circumstances, "the circumstances that caused a litigant's delay [must be] both extraordinary *and* beyond its control." *Id.*

Several Circuit Courts have held that the COVID-19 pandemic does not automatically warrant equitable tolling of the statute of limitations. *See Powell v. United States*, 2022 WL 2811987 (11th Cir. 2022) (holding that "lockdowns and similar limitations imposed because of the COVID-19 pandemic were not extraordinary circumstances which by themselves justify equitable tolling."); *Lamebull v. City and County of Denver*, 2022 WL 2951689 (10th Cir. 2022) (finding the COVID-19 pandemic did not warrant equitable tolling of the applicable statute of limitations).

In *Sneed v. Shinseki*, the Federal Circuit held that attorney abandonment can justify the equitable tolling of the statute of limitations. 737 F.3d 719, 726–27 (Fed. Cir. 2013). "[U]nprofessional attorney conduct may, in certain circumstances, prove 'egregious' and can be 'extraordinary,'" thus forming a basis for equitable tolling. *Holland,* 130 S.Ct. at 2564 (citations omitted). In contrast, "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling." *Id.*

### V.  Discussion

Mr. Giaccio passed away on November 19, 2018. 24 months from his date of death was November 19, 2020. The petition in this case was filed on March 18, 2021, 120 days after November 19, 2020. Thus, in order to be timely, equitable tolling must apply to 120 days of this period of time. For the reasons discussed below, I find that it does not.

Petitioner contends that "[t]he extraordinary circumstance in [her] case ran from August 2020 until February 2021 when the circumstances were dire." Pet'r's Br. at 5. Petitioner described the events that took place during this time. She noted the following:

> [I]n August 2020, counsel's father became seriously ill with cancer and heart failure had to be placed in hospice care. Counsel's father ultimately passed away at the end of September, requiring planning for a sequestered grave side out of state funeral conducted in the first part of October 2020.

> Counsel spent the following week in Georgia juggling 6 Social Security telephone hearings and appointments, all the while trying clean out his father's belongings from the facility where he resided and handle his affairs.

> Counsel under the stress developed stomach illness requiring a colonoscopy of November 9, 2020, and being absent on November 13, 2020 due to stomach pain,

5

preceded by scrambling to cover 16 Social Security Disability hearings between October 19, 2020 and November 9, 2020 upon his return to the office.

Counsel's paralegal became sick with Covid in November 2020, left work on November 17, 2020 and missed three weeks of work.

In December 2020, Dr. Rita McConn Stern became ill for 6 weeks from complications from a medical procedure.

On December 31, 2020, counsel and his wife both contracted Covid 19. Unfortunately, counsel developed bilateral viral pneumonia, missing the entire month of January returning to work in poor health in February 2021.

*Id.* at 3-7.

The following table depicts the timeline outlined by Petitioner in her brief.

| Reason | Start Date | End Date | Number of Days |
|---|---|---|---|
| Counsel's father's illness, subsequent death, and funeral. | 8/1/2020 | 10/5/2020 | 66 |
| "Counsel spent the following week in Georgia juggling 6 Social Security telephone hearings and appointments, all the while trying clean out his father's belongings from the facility where he resided and handle his affairs." | 10/7/2020 | 10/11/2020 | 5 |
| "Counsel under the stress developed stomach illness requiring a colonoscopy of November 9, 2020, and being absent on November 13, 2020 due to stomach pain." | 11/9/2020 11/13/2020 | 11/9/2020 11/13/2020 | 1 1 |
| This was preceded by "scrambling to cover 16 Social Security Disability hearings between October 19, 2020 and November 9, 2020 upon his return to the office." | 10/19/2020 | 11/9/2020 | 22 |
| Counsel's paralegal became sick with Covid in November 2020, left work on November 17, 2020 and missed three weeks of work. | 11/17/2020 | 12/8/2020 | 21 |
| "In December 2020, Dr. Rita McConn Stern became ill for 6 weeks from complications from a medical procedure." | Unclear, sometime in 12/2020 | Unclear, sometime in 1/2021 | ~42 |
| "On December 31, 2020, counsel and his wife both contracted Covid 19. Unfortunately, counsel developed bilateral viral pneumonia, missing the entire month of January returning to work in poor health in February 2021." | 12/31/2020 | 2/1/2021 | 33 |

This list of "extraordinary circumstances" can be grouped into several categories: counsel's health, counsel's personal family issues, counsel's other work commitments, counsel's paralegal's health, and Petitioner's expert's health. I find that three of these categories -- counsel's other work commitments, counsel's paralegal's health, and Petitioner's expert's health do not constitute extraordinary circumstances that trigger the application of the equitable tolling doctrine.[4] I briefly address each in turn.

Mr. Rogers was clearly busy the week of October 7 and between October 19 and November 9, 2020. However, being busy with other work commitments did not render him unable to perform work on the case at bar. The prioritization of one case over another does not constitute an extraordinary circumstance which prevented Petitioner from diligently pursuing her rights in the Vaccine Program.

Although counsel for Petitioner works in a small law office, composed of three attorneys and five support staff members (Pet'r's Br. at 4) the fact that one paralegal was sick for a three week period of time did not prevent counsel from filing the petition in this case. A different paralegal, Mr. Rogers, or one of the other attorneys could have drafted and filed the petition.

Finally, while it can be helpful to file an expert report at the same time as the petition, it is not required. The Vaccine Rules provide that the petition must set forth:

> **(A)** a short and plain statement of the grounds for an award of compensation, including:
> **(i)** the name of the individual to whom the vaccine was administered;
> **(ii)** the date and place of the vaccination;
> **(iii)** a specific description of the injury alleged; and
> **(iv)** whether the injury claimed is contained within the Vaccine Injury Table (*see* "Guidelines for Practice Under the National Vaccine Injury Compensation Program," Attachment 8, posted on the court's website at www.uscfc.uscourts.gov); and
> **(B)** a specific demand for relief to which the petitioner asserts entitlement or a statement that such demand will be deferred pursuant to 42 U.S.C. §300aa- 11(e).

Appendix B, Vaccine Rules of the United States Court of Federal Claims, Rule 2(c)(1)(A-B). Required attachments to the petition include medical records, affidavits, and proof of authority to file in a representative capacity. Vaccine Rule 2(c)(2)(A-C). An expert report is not enumerated in this list of required filings. Accordingly, Dr. Stern's six week illness does not trigger the equitable tolling doctrine in that the absence of an expert report did not prevent Petitioner from filing her petition. In fact, she ultimately filed her petition without a report from Dr. Stern.

There is no evidence that Mr. Rogers abandoned his client in the case at bar. Instead, this circumstances of this case amount to "a garden variety claim of excusable neglect." *Holland,* 130 S.Ct. at 2564. Ultimately, no evidence has been presented which suggests that the application of the equitable tolling doctrine is appropriate in this case. There is no indication that any type of fraud or duress occurred which prevented Petitioner from bringing her claim. Further, there is no

---

[4] Because the remaining categories do not add up to 120 days, I have not analyzed them.

indication in the record that Petitioner "diligently pursued h[er] rights, but that 'some extraordinary circumstances stood in h[er] way.'" *Pace v. DiGuglielmo*, 544 U.S. at 418.

**VI.  Conclusion**

The petition in this case was filed more than 24 months after Mr. Giaccio's death. Petitioner has not justified the tolling of the statute of limitations.

The case is hereby **DISMISSED** because it is barred by the statute of limitations. **The Clerk shall enter judgment accordingly.**

**IT IS SO ORDERED.**

<u>**s/ Katherine E. Oler**</u>
Katherine E. Oler
Special Master