# In the United States Court of Federal Claims

ADRIENNE FALZON, as legal representative of and administrator of the ESTATE OF PAUL GIACCIO,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

No. 21-vv-1082

Filed: January 23, 2023

Publication: January 25, 2023[1]

*David Gregory Rogers*, Rogers, Hofrichter & Karrh, LLC, Fayetteville, Georgia for Petitioner.

*Voris E. Johnson, Jr.*, United States Department of Justice, Senior Trial Attorney, Civil Division, Torts Branch, Washington, District of Columbia for Respondent. With him on the brief were *Brian M. Boynton*, United States Department of Justice, Principal Deputy Assistant Attorney General; *C. Salvatore D'Alessio*, United States Department of Justice, Director, Civil Division, Torts Branch; *Heather L. Pearlman*, United States Department of Justice, Deputy Director, Civil Division, Torts Branch; and *Traci R. Patton*, United States Department of Justice, Assistant Director, Civil Division, Torts Branch.

## MEMORANDUM AND ORDER

Pending before the Court is Petitioner Adrienne Falzon's Motion for Review of a Special Master's Decision dismissing her petition for compensation under the National Vaccine Injury Compensation Program. This case involves sad circumstances that evoke sympathy from the Court. There is a substantial emotional and mental toll associated with the loss of a loved one, and this Court acknowledges the tragic events that befell both Petitioner and her counsel. Specifically,

---

[1] On January 23, 2023, the Court filed a restricted version of this Memorandum and Order. *See* ECF No. 33. As the parties do not propose any redactions, the Court is publicly reissuing its Memorandum and Order. *See* ECF No. 34. The restricted and public versions of this Memorandum and Order are identical, except for the publication date and this footnote.

this Court empathizes with Petitioner and her family for the loss of Petitioner's son, Paul Giaccio, and also sympathizes with Petitioner's counsel for the personal hardship he has endured, particularly related to time spent caring for his ailing father.  The difficulties associated with such circumstances are not lost on this Court.

Despite the Court's empathy towards Petitioner and her counsel, this Court must nevertheless adjudicate cases based on a diligent application of the law, even when such an approach might lead to disappointing or unfulfilling results for those involved.  For the reasons discussed further below, the law requires this Court to rule in favor of Respondent.

*   *   *

On August 15, 2022, the U.S. Court of Federal Claims Office of Special Masters dismissed Petitioner Adrienne Falzon's (Petitioner's) Petition for Vaccine Compensation under the National Childhood Vaccine Injury Act of 1986 (Vaccine Act or Act), filed on behalf of the Estate of Paul Giaccio (ECF No. 1) (Petition).  Decision Dismissing Petition (ECF No. 27) (Decision); *Falzon v. Sec'y of Health & Hum. Servs.*, No. 21-1082V, 2022 WL 6616721 (Fed. Cl. Spec. Mstr. Aug. 15, 2022).  The Special Master did not reach the merits of the Petition; instead, she dismissed the claim based on Petitioner's failure to timely file the Petition within the statute of limitations period defined in the Vaccine Act.  *See Falzon*, 2022 WL 6616721, at *5–*8; 42 U.S.C. § 300aa-16(a)(3).  On August 31, 2022, Petitioner filed a Motion for Review of the Decision (Motion or Motion for Review) pursuant to Rule 23 of Appendix B of the Rules of the United States Court of Federal Claims (Vaccine Rule(s)).[2]  *See* ECF No. 28 (Mot.).  Petitioner also filed a Memorandum with her

---

[2] Petitioner contends this Motion was filed pursuant to Vaccine Rules 10(e) and 23.  Mot. at 1. Both rules address motions challenging a decision issued by a Special Master.  *See* Vaccine Rules 10(e) and 23.  Vaccine Rule 10(e) addresses Motions for Reconsideration by the Special Master and states that a party may file a Motion for Reconsideration within 21 days after the issuance of the Special Master's decision "if a judgment has not been entered and no motion for review under

Motion detailing her objections to the Decision (Memorandum).  *See* ECF No. 29 (Pet'r Memo); *see* Vaccine Rule 24.

Petitioner argues the Special Master erred by declining to apply the doctrine of equitable tolling to excuse Petitioner's untimely filing.  *See* Pet'r Memo at 19–20.[3]  Petitioner, therefore, urges this Court to overturn the Decision dismissing Petitioner's case and remand the Petition to the Office of Special Masters for further consideration on the merits.  *Id.*  For the reasons described in this Memorandum and Order, Petitioner's Motion for Review is **DENIED**.

## BACKGROUND

### I.    Factual Background

On November 13, 2018, Paul Giaccio visited his primary care physician complaining of left shoulder and back pain that limited his mobility and led to an inability to sleep on his left side for several months prior.  Petition for Vaccine Compensation (ECF No. 1) (Pet.) ¶ 3; Medical Records for Paul Giaccio (ECF No. 1-5) (Medical Records) at 12 (noting Paul Giaccio "recently started having left shoulder pain. . . . decreased [range of motion]. . . . [and is] now not able to sleep on his left side"); *see also Falzon*, 2022 WL 6616721, at *1.  Mr. Giaccio was diagnosed with acute pain of the left shoulder.  Medical Records at 12, 14; *see also Falzon*, 2022 WL

---

Vaccine Rule 23 has been filed."  Vaccine Rule 10(e)(1).  In contrast, Vaccine Rule 23 addresses Motions for Review by a U.S. Court of Federal Claims judge and states, "To obtain review of the special master's decision, a party must file a motion for review with the clerk within 30 days after the date the decision is filed."  Vaccine Rule 23.  Petitioner filed the present Motion 16 days after the Special Master released her Decision and before any judgment had been rendered in the case. *See* Decision; Mot.  As it is evident from Petitioner's briefing that she intended to file a motion for this Court to review the Special Master's Decision, this Court considers Petitioner's Motion as a Motion for Review under Vaccine Rule 23, rather than as a Motion for Reconsideration under Vaccine Rule 10(e).

[3] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

6616721, at *1.  During his visit, Mr. Giaccio received the influenza (flu) vaccine in his left arm. Pet. ¶ 2; Medical Records at 11–12, 14, 17; *see also Falzon*, 2022 WL 6616721, at *1.  Mr. Giaccio also had blood drawn from his right arm for a series of lab tests.  Medical Records at 14–17 (listing the various lab tests performed using samples collected on November 13, 2018); *see also* Respondent's Response to Petitioner's Motion for Review (ECF No. 31) (Resp.) at 7 n.5.

Mr. Giaccio returned to his primary care physician on November 16, 2018, complaining of right shoulder pain in his upper back, down to his shoulder, and into his armpit.  Pet. ¶ 4; Medical Records at 10–11 (noting "right shoulder pain . . . . in right upper back down into shoulder and into armpit"); *see also Falzon*, 2022 WL 6616721, at *1.  He also complained of fatigue and headache.  Pet. ¶ 4 (Mr. Giaccio "complain[ed] of flu like symptoms"); Medical Records at 10–11 (noting "increased fatigue and a headache"); *see also Falzon*, 2022 WL 6616721, at *1.  The primary care physician diagnosed Mr. Giaccio with trapezius muscle spasms, prescribing non-steroidal anti-inflammatory drugs and a muscle relaxer.  Medical Records at 10–11; *see also Falzon*, 2022 WL 6616721, at *1.  The primary care physician advised Mr. Giaccio to consult an orthopedic physician because the pain in his right shoulder was "unlikely . . . due to flu shot in left arm."  Medical Records at 11; *see also Falzon*, 2022 WL 6616721, at *1.

On November 18, 2018, Mr. Giaccio's roommate found Mr. Giaccio unresponsive and without any vital signs in the bathroom of their shared residence.  Cobb County Office of the Medical Examiner's Report (ECF No. 1-6) (Autopsy Report) at 19; *see also Falzon*, 2022 WL 6616721, at *1.  Responding Cobb County uniformed officers and firefighters pronounced Mr. Giaccio deceased at 1:52 a.m. on November 19, 2018.  Autopsy Report at 20; *see also Falzon*, 2022 WL 6616721, at *1.  An autopsy performed on November 20, 2018 revealed "[n]ecrosis and acute inflammation of the right pectoralis muscle," "[p]leuritis of right chest cavity with

pneumonia of right lung," "[m]yocardial necrosis," "[s]oftening with prominence of white pulp of spleen," "[h]emorrhagic change of adrenal glands," "[d]iffusely enlarged lymph nodes," "[p]ulmonary congestion and edema," and "[c]erebral edema."  Autopsy Report at 3; *see also Falzon*, 2022 WL 6616721, at *1.  The pathologist identified Mr. Giaccio's cause of death as "Sepsis [d]ue to . . . Group A Streptococcal Necrotizing Myositis."[4]  Autopsy Report at 3; Pet. ¶ 5; *see also Falzon*, 2022 WL 6616721, at *1.

## II.     Petition for Compensation

In June 2019, Mr. Giaccio's family retained counsel to "investigate the matter of [Mr. Giaccio's] death, and the possible reaction [the] flu vaccine [administered on] November 13, 2018" may have caused.  Pet'r Memo at 2; *see also* Affidavit of Petitioner's Counsel, David Gregory Rogers (ECF No. 25-1) (Attorney Affidavit) ¶ 1.  On March 18, 2021, Petitioner, as the legal representative and administrator of the Estate of Paul Giaccio,[5] filed a Petition for Vaccine

---

[4] "Streptococcal necrotizing myositis, also known as gangrenous myositis, is a very rare and severe soft tissue infection that predominantly involves skeletal muscle and, eventually, superficial fascia and surrounding tissues. . . . A high morbidity and mortality rate has been reported in the small number of cases since 1900."  Justin J. Hourmozdi et al., *Streptococcal Necrotizing Myositis: A Case Report and Clinical Review*, 46 J. Emergency Med. 436, 436 (2014); *see* Petition, Exhibit 4 (ECF No. 1-7) at 1.

[5] The record suggests ambiguity may exist regarding whether Petitioner Adrienne Falzon is the appropriate legal representative to file a petition for compensation on behalf of Mr. Giaccio's estate.  *See, e.g.*, *Falzon*, 2022 WL 6616721, at *2 n.3 ("As of the date of this decision, Petitioner has not filed probate documents demonstrating that she (or someone else) is the administrator of Mr. Giaccio's estate.  In her motion for extension of time, Petitioner states that 'There has been considerable controversy in the handling of the estate, with the first administrator Althea Caces being removed by the Probate Court, and replaced by Hillary Cranford, esq.'"); Resp. at 5 n.1 ("[P]etitioner has never formally moved to amend the case caption to add Ms. Cranford (or anyone else besides Ms. Falzon) as a petitioner.").  As the Special Master noted in her Decision, Petitioner Adrienne Falzon has never filed probate documentation demonstrating that she possesses any legal authority to make decisions on behalf of Mr. Giaccio's estate.  *Falzon*, 2022 WL 6616721 at *2 n.3.  This is despite the fact that the Chief Special Master ordered Petitioner on February 16, 2022 to file such probate documentation as would establish herself as the administrator of Paul Giaccio's estate.  *See* Pre-Assignment Review (PAR) – Activation and Reassignment Order (ECF No. 14).

Compensation before the Office of Special Masters against the Secretary of Health and Human

Services (Respondent or Secretary).  *See generally* Pet.; *see also Falzon*, 2022 WL 6616721, at

*2.  Petitioner asserted the influenza vaccine administered in Mr. Giaccio's left arm on November

13, 2018 "either exacerbated or caused" the streptococcal necrotizing myositis and sepsis that

resulted in Mr. Giaccio's death.  Pet. ¶ 6.  However, Petitioner filed her Petition approximately

119 days[6] past the applicable 24-month statute of limitations deadline defined in 42 U.S.C.

---

Under the Vaccine Act, "(t)he *legal representative* of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table may . . . file a petition for compensation under the program." 42 U.S.C. § 300aa-11(b)(1)(A) (emphasis added).  An oft-overlooked portion of the Vaccine Act defines the term "legal representative" as "a parent or an individual who qualifies as a legal guardian under State law."  42 U.S.C. § 300aa-33(2).  The Vaccine Rules require that a petition "filed on behalf of a deceased person or . . . by an individual other than the injured person or the parent of an injured minor . . . must also be accompanied by documents establishing the authority to file the petition in a representative capacity or a statement explaining when such documentation will be available."  Vaccine Rule 2(c)(2)(C).

Under the statute's plain language, solely by virtue of being a parent to Paul Giaccio, Petitioner Adrienne Falzon was entitled to file the Petition on behalf of Mr. Giaccio's estate.  *See* 42 U.S.C. § 300aa-33(2) (defining "legal representative" as "a parent or an individual who qualifies as a legal guardian under State law").  The documentation Ms. Falzon was required to file with her Petition to "establish[] the authority to file the petition in a representative capacity" under Vaccine Rule 2(c)(2)(C), then, need only have demonstrated her status as Mr. Giaccio's parent.  Vaccine Rule 2(c)(2)(C); *see* 42 U.S.C. § 300aa-33(2).  Ms. Falzon accordingly filed both Mr. Giaccio's birth certificate and an affidavit to satisfy this requirement.  *See* Paul Giaccio Certificate of Birth (ECF No. 1-4) (listing Ms. Falzon, under the name "Adrienne L. DiFrancesco," as mother); Affidavit of Adrienne Falzon (ECF No. 1-8) at 1 ("I am the mother of Petitioner, Paul Giaccio. . . . I am his closest next [of] kin and authorized to file this petition as a representative of his estate.").  Thus, Petitioner Adrienne Falzon had standing to file the Petition under the Vaccine Act to redress the injuries to Mr. Giaccio, regardless of whether she had legal probate authority to serve as Mr. Giaccio's estate administrator.  This Court, therefore, may proceed in deciding the issue of equitable tolling, as Adrienne Falzon has standing here under the Vaccine Act.

[6] The Respondent asserts that Petitioner missed the November 19, 2020 filing deadline by 120 days.  *See* Resp. at 7–8, 11–12; *see also Falzon*, 2022 WL 6616721, at *4, *5 n.4 (Special Master Decision finding Petitioner missed filing deadline by 120 days).  This Court notes, however, that Petitioner's filing date, March 18, 2021, is 119 days after the November 19, 2020 deadline.  Though this discrepancy does not impact the outcome here, this Court will consider a 119-day tolling period in determining the Motion.

§ 300aa-16(a)(3) of the Vaccine Act; it is undisputed that the statute of limitations deadline was November 19, 2020.  *See* 42 U.S.C. § 300aa-16(a)(3); Pet'r Memo at 16 (noting "the statute ran on November 19th, 2020"); Resp. at 7 ("[T]he petition in this case should have been filed by November 19, 2020 . . . ."); *see also Falzon*, 2022 WL 6616721, at *4.  On May 23, 2022, the Special Master conducted a status conference and ordered the parties to file supplemental briefing on the statute of limitations issue.  Scheduling Order, dated May 23, 2022 (ECF No. 24) at 1.

In her Supplemental Brief, Petitioner did not dispute that she had failed to file her Petition within the statute of limitations.  Petitioner's Supplemental Brief in Support of Petition (ECF No. 25) (Pet'r Supp.) at 8 ("Counsel filed the petition [on] March 18, 2021, approximately 4 months after the 2 year statute of limitations for a death related cause of action.").  Instead, she argued the Special Master should apply the doctrine of equitable tolling to excuse the tardiness of her Petition, citing a series of alleged "extraordinary circumstances" incurred by her counsel and a proposed expert witness, which she contended collectively prevented her from meeting the two-year statutory filing deadline.  *See generally* Pet'r Supp. at 8–19; *see also* Attorney Affidavit.  In response, the Secretary argued that "[e]ven accepting all of the facts alleged by petitioner's counsel as true, they do not provide sufficient grounds for applying the doctrine of equitable tolling in this case."  Respondent's Response to Petitioner's Supplemental Brief in Support of Petition (ECF No. 26) (Resp.'s Supp.) at 3.

The Special Master considered Petitioner's explanations for the delayed filing and held that Petitioner failed to demonstrate circumstances that justified tolling the statute of limitations for a period of approximately 120 days. *Falzon*, 2022 WL 6616721, at *4–*6.  Specifically, the Special Master grouped the Petitioner's alleged "extraordinary circumstances" contentions into five categories: "counsel's health, counsel's personal family issues, counsel's other work

commitments, counsel's paralegal's health, and Petitioner's expert's health." *Id.* at *5. She first assessed three of these categories — counsel's other work commitments, counsel's paralegal's health, and Petitioner's expert's health — and determined that each contention failed to "constitute extraordinary circumstances that trigger the application of the equitable tolling doctrine." *Id.* The Special Master then noted that even if the remaining categories — counsel's health and counsel's personal family issues — constituted extraordinary circumstances, the periods of delay attributable to those events did not exceed the approximately 120-day tolling period necessary to justify the delayed filing. *Id.* at *5 n.4.

Finally, the Special Master noted "[t]here is no evidence that [Petitioner's counsel] abandoned his client in the case at bar," and noted instead that the alleged circumstances amounted to "a garden variety claim of excusable neglect" ineligible for equitable tolling. *Id.* at *5 (internal quotation marks omitted) (quoting *Holland v. Florida*, 560 U.S. 631, 651–52 (2010)). Accordingly, the Special Master declined to apply the doctrine of equitable tolling to excuse Petitioner's untimely filing and dismissed the Petition on August 15, 2022 on statute of limitations grounds. *Id.* at *5–*6.

### III.    Petitioner's Motion for Review

Petitioner filed the present Motion for Review on August 31, 2022. *See* Mot.; Pet'r Memo. Petitioner urges this Court to apply the doctrine of equitable tolling to excuse her delayed filing, and accordingly reverse the Special Master's dismissal and remand the case for further consideration on the merits. Pet'r Memo at 5, 19–20. To justify this request, Petitioner argues she, through her counsel, experienced a period of extraordinary circumstances "from August 2020 until February 2021," when her counsel returned to work. *Id.* at 5, 14 ("[T]he 'period of extraordinary circumstances' in question in this case runs from August 1, 2020 until mid February

2021 . . . .").  She further argues that such extraordinary circumstances prevented her from filing her Petition until March 18, 2021, approximately four months after the statute of limitations had expired.  *Id.* at 5 ("The complications in researching [Mr. Giaccio's] death, the death of counsel's father, the staggered work hours in a small office, counsel's paralegal's illness along with exposure to the entire office, and finally counsel's own illness resulted in this petition being filed outside of 2 years from Petitioner's death."), 8 ("Counsel filed the petition [on] March 18, 2021, approximately 4 months after the 2 year statute of limitations for a death related cause of action."). The allegedly extraordinary circumstances Petitioner identified in her Memorandum before this Court mirror those she had raised previously in her Supplemental Brief filed before the Special Master.  *Compare, e.g.*, Pet'r Memo at 2–8, 12–18, *with* Pet'r Supp. at 2–8, 11–14, 16–19; *see generally* Attorney Affidavit; *see also Falzon*, 2022 WL 6616721, at *5 (Special Master defining five categories of Petitioner's alleged extraordinary circumstances).

As in her Supplemental Brief, Petitioner repeatedly references allegedly "extraordinary circumstances" and complications associated with the COVID-19 pandemic as the cause of her delayed filing.  *See, e.g.*, Pet'r Memo at 5 ("But for the Covid 19 pandemic, this Petition would have been filed within 2 years of Petitioner's death . . . . [G]iven the extraordinary circumstances cause[d] by the Covid 19, once in 100 years Pandemic . . . counsel respectfully asks the court if the Doctrine of Equitable tolling of the statute might apply."), 11 (Petitioner "allege[s] the Covid 19 pandemic, the worst pandemic in over 100 years, created the circumstances that caused litigant's delay"), 14 ("[C]ounsel was incapacitated with family illness, death, office staff illness and personal illness, either caused or complicated by the Covid 19 Pandemic."), 15 ("While several issues complicated the Petition being timely filed, Covid 19 was at the heart of them all."). Petitioner's Memorandum also asserts the following specific circumstances impeded her ability to

timely file her Petition; Respondent does not dispute those factual contentions.  *See generally* Resp. at 6–13.

*First*, Petitioner alleges that her counsel's father experienced health problems that inhibited her counsel's ability to pursue Petitioner's case.  Attorney Affidavit ¶¶ 3–9; Pet'r Memo at 3. Specifically, Petitioner's counsel avers that he cared for his ailing father from August 2020, when his father entered hospice care, until September 25, 2020, when his father passed away.  Attorney Affidavit ¶¶ 3–7; Pet'r Memo at 5–6.  Petitioner's counsel further states that caring for his father during this period became difficult due to the pandemic protocols in place that limited visitors at the hospice facility.  Pet'r Memo at 3.  Additionally, Petitioner's counsel states that he was also charged with planning his father's funeral and managing his estate, which kept counsel out of the office until he returned on October 5, 2020.  Attorney Affidavit ¶¶ 8–9; Pet'r Memo at 3–4, 6.

*Second*, Petitioner's counsel avers that certain illnesses, including COVID-19, afflicted him and his staff during this time, preventing timely filing of the Petition.  According to Petitioner's counsel, he had a colonoscopy on November 9, 2020 related to stomach issues he experienced after his father's death.  Attorney Affidavit ¶ 13; Pet'r Memo at 6.  Additionally, he missed work on November 13, 2020 because of related stomach pain.  Attorney Affidavit ¶ 13; Pet'r Memo at 6.  Though occurring after the November 19, 2020 statutory filing deadline, counsel states that he later contracted COVID-19 on December 31, 2020, and became ill.  Attorney Affidavit ¶ 18; Pet'r Memo at 7.  Counsel states that he remained out of office for all of January 2021 and was "incapacitated to part time work through mid February 2021."  Pet'r Memo at 7, 17; Attorney Affidavit ¶ 18.  Petitioner's counsel also notes that one of his paralegals missed three weeks of work after falling ill on November 14, 2020, and being diagnosed with COVID-19 on November 17, 2020.  Pet'r Memo at 4, 6–7; Attorney Affidavit ¶¶ 14–16.  He further states that

because he works at a small law firm with only three attorneys and five support staff, each with specialized practice areas, his paralegal's absence caused additional professional pressures. Pet'r Memo at 4; Attorney Affidavit ¶ 16. Specifically, Petitioner's counsel contends that allocating the firm's remaining members to cover the ill paralegal's usual tasks became difficult and caused additional delays, as other staff members were not as familiar with the ill paralegal's duties. Pet'r Memo at 4. Petitioner's counsel also alleges that, after his paralegal became ill, his law firm imposed a staggered in-person work schedule to minimize exposure to COVID-19, which further negatively impacted workflow. Attorney Affidavit ¶ 16; Pet'r Memo at 7, 16. Despite those efforts, Petitioner's counsel states that another attorney and staff member with the firm were diagnosed with COVID-19 during that same period. Attorney Affidavit ¶ 16; Pet'r Memo at 7, 16.

*Third,* Petitioner alleges that complications affecting her expert, Dr. Rita McConn Stern, further impaired her ability to timely file her Petition. Dr. Stern is an expert on sepsis who had agreed to research Mr. Giaccio's case on behalf of Petitioner. Pet'r Memo at 2. Petitioner states that the COVID-19 pandemic limited Dr. Stern's ability to research Petitioner's case or consult other leading scientists on sepsis beginning in March 2020. *Id.* at 3, 5 ("[T]he COVID 19 Pandemic essentially stalled the investigation of the claim with expert Rita McConn Stern."). Further, though occurring after the November 19, 2020 filing deadline, Petitioner's counsel avers that Dr. Stern herself experienced medical issues in December 2020 related to dental anesthesia that prevented her from completing further work or research on Petitioner's case for six weeks. Attorney Affidavit ¶ 18; Pet'r Memo at 4, 7–8. Though an expert report is not necessary to filing a Petition, Petitioner contends that, because of these delays, she ultimately filed her Petition without an expert report from Dr. Stern. Attorney Affidavit ¶¶ 21–22; Pet'r Memo at 4–5, 8; *see*

*also* 42 U.S.C. § 300aa-11(c) (describing a Petition's required contents upon filing, which do not include expert reports); Vaccine Rule 2(c)(2) (same).

*Fourth*, in addition to the personal issues and health complications Petitioner's counsel faced, he states in the Memorandum that professional conflicts likewise prevented him from working on Petitioner's case.  Attorney Affidavit ¶ 9; Pet'r Memo at 6.  Specifically, he reports that when able to perform work in the office, several conflicting legal matters contributed to his inability to file the Petition on time.  Pet'r Memo at 6.  This included (i) six Social Security hearings and appointments from October 5–9, 2020, and (ii) sixteen Social Security disability hearings between October 19, 2020 and November 9, 2020.  Attorney Affidavit ¶ 9; Pet'r Memo at 6.

Despite these hardships, Petitioner maintains that she, through counsel, diligently pursued her case from August 2020 through mid-February 2021.  *See, e.g.*, Pet'r Memo at 5 ("Counsel diligently pursued the claim around these obstacles posed by the Covid 19 Pandemic.").  Petitioner's counsel avers that he emailed Dr. Stern on September 18, 2020, seeking clarification regarding Dr. Stern's opinion on "the mechanism of [Mr. Giaccio's] death."  Attorney Affidavit ¶ 10; *see also* Pet'r Supp. at 14–15.  On October 9, 2020, counsel alerted Dr. Stern he could not review the "189 death cases filed in the vaccine court" that Dr. Stern had requested he review because he was just returning to work after having planned and attended his father's funeral.  Attorney Affidavit ¶ 11.  On November 4, 2020, prior to the November 19, 2020 statutory filing deadline, Petitioner's counsel and Dr. Stern held a conference call to discuss Dr. Stern's findings, during which time they had "a meeting of the minds about what an expert letter from [Dr. Stern] might contain that Dr. Stern felt confident in stating."  Pet'r Supp. at 14–15; *see also* Attorney Affidavit ¶ 12.  Counsel requested that Dr. Stern provide a letter regarding her opinion on Mr. Giaccio's case.  Attorney Affidavit ¶ 12.  Counsel avers that after the filing deadline had passed,

he further "attempt[ed] to push the case forward in [December 2020] in responding to [Dr. Stern's] request for research on 189 death cases filed in the vaccine court."  Pet'r Memo at 7; *see also* Attorney Affidavit ¶ 17 ("In December 2020, [counsel] did review the cases Dr. Stern sent and responded to her on December 11, 2020.").  On January 22, 2021, Dr. Stern informed counsel that she had been sick for the past six weeks and had not performed any research on Petitioner's claim during that period.  *See* Attorney Affidavit ¶ 18; *see also* Pet'r Memo at 4, 7–8.

Petitioner alleges that "[c]ounsel's highest priority up[on] return [to the office in February 2021] was to collect the evidence needed to file Petitioner's Petition."  Pet'r Memo at 4.  According to Petitioner, counsel engaged in "several conversations with Dr. Stern in February 2021."  *Id.* at 8; *see also* Attorney Affidavit ¶¶ 19–21.  On February 10, 2021, "[counsel] sent Dr. Stern other expert reports from vaccine cases to review for her understanding."  Attorney Affidavit ¶ 19.  On February 25, 2021, Dr. Stern emailed counsel to provide an update on her views regarding Mr. Giaccio's case.  *Id.* ¶ 20.  Despite these efforts, counsel states that conversations with Dr. Stern in the following days revealed "the petition must [be] filed without her report given the circumstances of the statute."[7]  *Id.* ¶ 21.  Counsel filed the Petition on March 18, 2021, without attaching an expert report.  *See id.* ¶¶ 21–22; Pet'r Memo at 4–5.

## IV.   The Secretary's Response

Respondent does not dispute any of the facts alleged by Petitioner in her Memorandum or the facts alleged in her counsel's Attorney Affidavit.  Instead, Respondent urges this court to

---

[7] This Court notes that any conduct or conversations that occurred after counsel returned to the office in mid-February fall outside of Petitioner's alleged period of extraordinary circumstances and are therefore irrelevant to this Court's diligence inquiry for purposes of assessing equitable tolling.  Pet'r Memo at 14 ("[T]he 'period of extraordinary circumstances' in question in this case runs from August 1, 2020 until mid February 2021 . . . .").

deny the Motion for Review because Petitioner's argument "amounts to nothing more than a disagreement with the special master's determination that the circumstances do not justify a period of equitable tolling long enough to make petitioner's claim timely." *Id.* at 6.  Advocating for a deferential standard of review by this Court, Respondent argues that the Special Master's Decision "is amply supported by the record and binding precedent" and that the process employed by the Special Master in rendering her decision was "entirely rational." *Id.* at 12.  Respondent also underscores the policies and procedures that the Office of Special Masters implemented during the pandemic to allow parties to timely file claims, despite the difficulties brought about by the COVID-19 pandemic. *Id.* at 13.  The Special Master, according to Respondent, "had ample factual and legal support for declining to hold that pandemic-related issues justified the application of equitable tolling." *Id.*

## APPLICABLE LEGAL STANDARDS

### I.    Judicial Review Under the National Vaccine Injury Compensation Program

The Vaccine Act created the National Vaccine Injury Compensation Program to compensate parties presumed or proven to be injured by certain vaccines. 42 U.S.C. § 300aa-10 *et seq.*  The Program was designed to "lessen the number of lawsuits against manufacturers and provide[ ] relative certainty and generosity of compensation awards in order to satisfy petitioners in a fair, expeditious, and generous manner." *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1325–26 (Fed. Cir. 2011) (internal citations and quotation marks omitted) (alteration in original); *see also K.G. v. Sec'y of Health & Hum. Servs.*, 951 F.3d 1374, 1380 (Fed. Cir. 2020) ("The Vaccine Act is a pro-claimant regime meant to allow injured individuals a fair and fast path to compensation . . . .") (citing *Cloer*, 654 F.3d at 1325).

14

The Vaccine Act grants jurisdiction to the Office of Special Masters "over proceedings to determine if a petitioner . . . is entitled to compensation under the Program" for vaccine-related injuries or deaths and the amount of compensation owed.  42 U.S.C. § 300aa-12(a).  The Act includes three statute of limitations provisions, the application of which depends on (1) the date upon which the vaccine was administered, and (2) the extent of the injury that resulted from the vaccination.  *See* 42 U.S.C. § 300aa-16(a)(1)–(3).  The statute of limitations relevant to Petitioner's claim is outlined in § 300aa-16(a)(3) and reads as follows:

> [I]f a death occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such death after the expiration of 24 months from the date of the death and no such petition may be filed more than 48 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of the injury from which the death resulted.

42 U.S.C. § 300aa-16(a)(3).

Section 300aa-12(e) of the Vaccine Act grants the United States Court of Federal Claims authority to review decisions of the Special Master upon a party's motion.  42 U.S.C. 300aa-12(e)(1); *see* Vaccine Rule 23.  In reviewing a Special Master's decision, this Court may

> set aside any findings of fact or conclusions of law . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or . . . remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2)(B)–(C).  Each standard of review referenced in the statute "applies to a different aspect of the judgment" and involves a different degree of deference given to the Special Master's determinations.  *Munn v. Sec'y of Dep't of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).  "Fact findings are reviewed . . . under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard."  *Id.*

15

Compliance with a statute of limitations is a question of law that this Court reviews *de novo*.  *See, e.g.*, *Goetz v. Sec'y of Health & Hum. Servs.*, 45 Fed. Cl. 340, 341 (1999), *aff'd*, 4 F. App'x 827 (Fed. Cir. 2001) ("Application of the statute of limitations is a question of law, which we review *de novo*.").  As noted, the parties do not dispute that Petitioner failed to comply with the statute of limitations outlined in 42 U.S.C. § 300aa-16(a)(3), and both parties acknowledge Petitioner filed her Petition 119 days after the limitations period had expired.  *See* Pet'r Memo at 8; Resp. at 7.  Instead, Petitioner asks this Court to apply the doctrine of equitable tolling to excuse her untimely filing and remand her Petition to the Special Master for further adjudication on the merits.  Pet'r Memo at 19–20.

## II.     Equitable Tolling

"Equitable tolling 'effectively extends an otherwise discrete limitations period set by Congress' . . . [and practically] 'pauses the running of, or "tolls," a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.'"  *Arellano v. McDonough*, No. 21-432, 2023 WL 349991, at *3 (U.S. Jan. 23, 2023) (citing *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)).  Even where a statute does not contain an express tolling provision, a rebuttable presumption exists that "courts may when circumstances require invoke the concept of tolling as an equitable matter."  *Catawba Indian Tribe of S.C. v. United States*, 982 F.2d 1564, 1571 (Fed. Cir. 1993).  This rebuttable presumption also exists in suits against the United States unless Congress expressly disallows equitable tolling within the text of a statute.  *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95–96 (1990) ("We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.  Congress, of course, may provide otherwise if it wishes to do so."); *see Arellano*, 2023 WL 349991, at *4 ("[I]f equitable

tolling is inconsistent with the statutory scheme, courts cannot stop the clock for even the most deserving plaintiff.") (cleaned up).  The United States Court of Appeals for the Federal Circuit (Federal Circuit) has confirmed "that equitable tolling applies to the Vaccine Act," meaning this court may, if circumstances merit, invoke the doctrine to excuse delayed petitions filed under the Act.  *Cloer*, 654 F.3d at 1340, 1344–45.

In considering equitable tolling outside of the Vaccine Act context, the Federal Circuit has indicated "cases . . . requiring application of the appropriate standard to undisputed facts, are properly questions of law reviewed de novo."  *Former Emps. of Sonoco Prods. Co. v. Chao,* 372 F.3d 1291, 1295 (Fed. Cir. 2004).  As noted, Respondent does not dispute the facts Petitioner raises in her Memorandum.  *See, e.g.*, Resp. at 6–9.  Instead, the parties disagree whether the Special Master erred in holding, under the facts alleged, that equitable tolling cannot be applied to excuse Petitioner's late filing.  *See, e.g.*, Resp. at 6 ("Petitioner's appeal amounts to nothing more than a disagreement with the special master's determination that the circumstances do not justify a period of equitable tolling long enough to make petitioner's claim timely . . . ."); Pet'r Memo at 5 ("[G]iven the extraordinary circumstances cause [sic] by the Covid 19, once in 100 years Pandemic, and diligent efforts to try to file the petition . . . counsel respectfully asks the court if the Doctrine of Equitable tolling of the statute might apply.").  Thus, the application of the equitable tolling doctrine to the undisputed facts of Petitioner's case presents a question of law that this Court reviews *de novo*.  *See, e.g.*, *Former Emps. of Sonoco,* 372 F.3d at 1295 ("The application of the diligence standard [for equitable tolling] to the undisputed facts of this case presents a question of law that we review de novo."); *see also Wax v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 538, 540 (2012) ("[P]etitioners argue that the special master's finding that their

claim was not subject to equitable tolling was contrary to law. . . . Accordingly, the court reviews [that] issue[] *de novo*.").

This Court must, therefore, determine whether the circumstances and conduct alleged by Petitioner permit application of the equitable tolling doctrine.  The party seeking equitable tolling of a statute of limitations bears the burden of proof.  *See, e.g.*, *Lockwood v. United States*, 90 Fed. Cl. 210, 218 (2008).  That party must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (internal quotation marks omitted) (quoting *Holland*, 560 U.S. at 649).  Under this two-pronged test, a party must prove both diligence and extraordinary circumstances to benefit from equitable tolling.  *Id.* at 256 ("[W]e have treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other."); *see also Crawley v. United States*, 157 Fed. Cl. 178, 181 (2021) (quoting this standard from *Menominee Indian Tribe*, 577 U.S. at 256, within the context of the FLSA).  "The application of equitable tolling should be considered on a case-by-case basis, and a rigid invocation of mechanistic rules should be avoided."  *J.H. v. Sec'y of Health & Hum. Servs.*, 123 Fed. Cl. 206, 216 (2015) (citing *Holland*, 560 U.S. at 649–50); *see also Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Cir. 2013) (noting the Federal Circuit has "rejected the approach of looking to whether a particular case falls within the facts specifically identified in *Irwin* or one of our prior cases" in deciding whether to apply equitable tolling) (internal quotation marks omitted) (quoting *Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005)).

To satisfy the diligence prong, a party must demonstrate he exercised "reasonable diligence, not maximum feasible diligence," in pursuing his rights.  *Checo v. Shinseki*, 748 F.3d

1373, 1380 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Holland*, 560 U.S. at 653). The level of diligence required of a party depends "on a consideration of all relevant facts and circumstances." *K.G.*, 951 F.3d at 1382.  Furthermore, such diligence need only have occurred during the period in which a party experienced extraordinary circumstances, rather than throughout the entire statute of limitations period.  *See Checo*, 748 F.3d at 1379–80 (citing *Harper v. Ercole*, 648 F.3d 132, 139 (2d Cir. 2011)); *see also K.G.*, 951 F.3d at 1379 ("A claimant need only establish diligence during the period of extraordinary circumstances to meet this test.") (citing *Checo*, 748 F.3d at 1380).  Therefore, courts assess whether a party's conduct demonstrates diligence during the alleged period of extraordinary circumstances.  *See Checo*, 748 F.3d at 1379–80; *K.G.*, 951 F.3d at 1379.  Courts are generally "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."  *Irwin*, 498 U.S. at 96; *see also Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights.") (internal quotation marks omitted) (quoting *McQuiddy v. Ware*, 87 U.S. 14, 17 (1873)).

   "The second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control," meaning that an "external obstacle" has impeded the party's ability to pursue his claim.  *Menominee Indian Tribe*, 577 U.S. at 256–57 (reaffirming standard for second prong of equitable tolling test) (emphasis in original). The Federal Circuit has endorsed a "stop-clock" approach to equitable tolling.  *Checo*, 748 F.3d at 1380 ("We agree with both parties and adopt the stop-clock approach.").  Under this approach, the statute of limitations is "'stopped' during the extraordinary circumstance period and starts ticking again only when the period is over."  *Checo*, 748 F.3d at 1379; *see also Sneed v. McDonald*, 819 F.3d 1347, 1353 (Fed. Cir. 2016) (noting that under the "stop-clock approach" introduced in

*Checo*, a statute of limitations is "tolled during the extraordinary circumstance period and resume[s] running when the extraordinary circumstance end[s]").  Thus, a court must also determine that the duration of a party's requested tolling period (*i.e.*, the number of days the party's filing exceeded the statute of limitations) is less than or equal to the duration of a party's alleged period of extraordinary circumstances.  *See Checo*, 748 F.3d at 1379; *McDonald*, 819 F.3d at 1353–54.

The Supreme Court has advised federal courts to invoke equitable tolling "sparingly," and has noted the "principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect."  *Irwin*, 498 U.S. at 96; *see also Cloer*, 654 F.3d at 1344–45 (citing *Irwin*, 498 U.S. at 96, for the same proposition).  For example, in *Irwin*, the Supreme Court identified a narrow field of circumstances that would warrant equitable tolling, including "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."  *Irwin*, 498 U.S. at 96; *see also Cloer*, 654 F.3d at 1344–45 (citing *Irwin*, 498 U.S. at 96, in the context of the Vaccine Act to underscore limited circumstances warrant equitable tolling).  It is insufficient to merely argue that a court's failure to invoke equitable tolling would "threaten[] to deprive [a party] of her claim."  *Cloer*, 654 F.3d at 1344.  As equitable tolling constitutes a further waiver of sovereign immunity when invoked against the federal government, an invocation of the doctrine "must be narrowly construed, based on the specific facts and circumstances of the individual case."  *Lockwood*, 90 Fed. Cl. at 218; *see also Irwin*, 498 U.S. at 96 ("Because the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity, it is evident that no more

favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants.").

"[U]nder our system of representative litigation, 'each party is deemed bound by the acts of his lawyer-agent.'" *Irwin*, 498 U.S. at 92 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962)). Attorney abandonment offers a "narrow exception to [this] usual rule," however, because "a client cannot be charged with the acts or omissions of an attorney who has abandoned him." *McDonald*, 819 F.3d at 1352 (internal quotation marks omitted) (quoting *Maples v. Thomas*, 565 U.S. 266, 283 (2012)); *see also Maples*, 565 U.S. at 282 ("[A] litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word.") (internal quotation marks omitted) (quoting *Holland*, 560 U.S. at 659 (Alito, J., concurring)). Thus, an attorney who has abandoned his client constitutes an "extraordinary circumstance" for the purposes of equitable tolling analysis. *See, e.g.*, *Holland*, 560 U.S. at 649 ("In this case, the 'extraordinary circumstances' at issue involve an attorney's failure to satisfy professional standards of care."); *Sneed v. Shinseki*, 737 F.3d at 726–27 (recognizing that "attorney abandonment may constitute a basis for equitable tolling" in action arising from U.S. Court of Appeals for Veterans Claims).[8]

---

[8] In applying the Supreme Court's attorney abandonment jurisprudence to veterans' cases, the Federal Circuit expressly referenced the similarities between equitable principles in the habeas corpus context and in the veterans context. *See Sneed v. Shinseki*, 737 F.3d at 728 ("[T]he equitable principles invoked in *Holland* and *Maples* apply just as strongly in veterans['] cases as they do in the habeas corpus context. Although benefits cases may not threaten veterans' liberty or persons, veterans risked both life and liberty in their military service to this country . . . . The Supreme Court held in *Maples* and *Holland* that habeas petitioners may benefit from equitable tolling in cases of attorney abandonment, and this court concludes that the same protection extends to veterans."). To date, the Federal Circuit has never endorsed attorney abandonment as a potential basis for equitable tolling within the context of the Vaccine Act. The Federal Circuit, however, justified its decision in *Sneed v. Shinsheki*, in part, by noting that in considering issues of equity, courts "'can and do draw upon decisions made in other similar cases for guidance.' . . . Such guidance may be found in cases other than veterans['] cases." *Sneed v. Shinsheki*, 737 F.3d at 726

Though no party alleges attorney abandonment here, and the Special Master found no attorney abandonment existed, jurisprudence on the issue is helpful to review in the context of equitable tolling.  *See Falzon*, 2022 WL 6616721, at *5 (noting "[t]here is no evidence that [Petitioner's counsel] abandoned his client in the case at bar").  Following Supreme Court precedent on attorney abandonment, the Federal Circuit has drawn a distinction between "mere attorney negligence . . . attributable to the client pursuant to general agency principles" and "unprofessional attorney conduct" that "prove[s] egregious" or "extraordinary."  *Sneed v. Shinseki*, 737 F.3d at 727 (internal quotation marks omitted) (citing *Maples*, 565 U.S. at 282, and quoting *Holland*, 560 U.S. at 651).  Only "egregious" or "extraordinary" attorney conduct can qualify as an extraordinary circumstance for the purposes of equitable tolling.  For example, "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline," would not qualify a party for equitable tolling.  *Id.* (quoting *Holland*, 560 U.S. at 651–52).  However, an attorney's "near-total failure to communicate with petitioner or to respond to [the client's] many inquiries and requests" may qualify as an extraordinary circumstance warranting equitable tolling.  *Id.* (quoting *Maples*, 565 U.S. at 282).  Nevertheless, to succeed in obtaining equitable tolling based on attorney abandonment a party must still demonstrate that he exercised due diligence in pursuing his claim, apart from any extraordinary circumstances.  *See, e.g.*, *McDonald*, 819 F.3d at 1353 (declining to apply equitable tolling where, "[e]ven assuming there was attorney abandonment, [the party] does not satisfy the diligence prong").  Thus, in assessing whether attorney abandonment can justify equitable tolling, a party must offer evidence

n.8 (quoting *Holland*, 560 U.S. at 650).  Nevertheless, this Court need not decide today whether a party may allege attorney abandonment to excuse a violation of the Vaccine Act's statute of limitations, as no party challenges the Special Master's finding of no abandonment and Petitioner's Motion for Review and Memorandum did not raise such an argument.  *See infra* Discussion Section I.A.

on the conduct of both the attorney and the client.  *See, e.g.*, *McDonald*, 819 F.3d at 1351–53; *Sneed v. Shinseki*, 737 F.3d at 726–27.

## <u>DISCUSSION</u>

While this Court empathizes with both Petitioner and her counsel, it is nevertheless bound by, and must follow, the law.  After review of the facts as alleged and applicable law, this Court holds that the Special Master's refusal to apply the doctrine of equitable tolling to Petitioner's case was appropriate and in accordance with applicable law.  Petitioner is not entitled to equitable tolling of the statute of limitations, and her Petition is therefore untimely.

The relevant facts are not in dispute.  Both parties agree that Petitioner filed her Petition on March 18, 2021, after the Vaccine Act's applicable statute of limitations, outlined in 42 U.S.C. § 300aa-16(a)(3), had run.  *See* Pet'r Memo at 8 ("Counsel filed the petition [on] March 18, 2021, approximately 4 months after the 2 year statute of limitations for a death related cause of action."); Resp. at 7 ("However, since the petition was not filed until March 18, 2021, it was late by [119] days.").  The parties also agree that the applicable statute of limitations deadline was November 19, 2020, two years, or 24 months, from the date of Mr. Giaccio's death.  *See* Pet'r Memo at 16 (noting "the statute ran on November 19th, 2020"); Resp. at 7 ("[T]he petition in this case should have been filed by November 19, 2020 . . . .").  Likewise, Respondent does not dispute the relevant facts regarding Petitioner's failure to timely file the Petition, including the unfortunate circumstances that plagued Petitioner's counsel.  *See generally* Resp.  The only remaining question is whether the doctrine of equitable tolling excuses Petitioner's tardy filing such that a remand of the Petition to the Special Master for further review on the merits is appropriate.  Pet'r Memo at 19–20.

While Congress enacted the Vaccine Act to compensate individuals injured by vaccinations, the plain language of the Act limits that waiver of sovereign immunity by imposing statutes of limitations to bar untimely claims. *Griglock v. Sec'y of Health & Hum. Servs.*, 687 F.3d 1371, 1376 (Fed. Cir. 2012) ("[T]he Vaccine Act provides a generous compensation program, but with limits, including the statute of limitations, to that generosity."). Though the Federal Circuit has affirmed that equitable tolling is available under the Vaccine Act, it has emphasized the doctrine is to be applied "sparingly." *Cloer*, 654 F.3d at 1344–45 (citing *Irwin*, 498 U.S. at 96); *see also Goetz v. Sec'y of Health & Hum. Servs.*, 4 F. App'x 827, 830 (Fed. Cir. 2001) ("A statute of limitations by its nature contains an element of harshness because it is meant to foreclose suit by the mere passage of time. Equitable tolling may in some cases alleviate the apparent harshness of a statute of limitations, but it is an extraordinary remedy used by courts only sparingly."). Indeed, the limited availability of equitable tolling under the Vaccine Act becomes more significant when one considers that invoking equitable tolling against the federal government constitutes a further waiver of sovereign immunity. *Lockwood*, 90 Fed. Cl. at 218; *see also Irwin*, 498 U.S. at 96 (acknowledging equitable tolling extends a waiver of sovereign immunity). The burden to prove whether a case involves facts exceptional enough to warrant equitable tolling falls on Petitioner as the party seeking the doctrine's application. *Lockwood*, 90 Fed. Cl. at 218; *see also Menominee Indian Tribe*, 577 U.S. at 255–56 (emphasizing the party seeking equitable tolling bears the burden to prove both diligence and extraordinary circumstances). For the reasons discussed below, this Court holds that Petitioner has failed to demonstrate that equitable tolling of the applicable statute of limitations is warranted here.

As noted, to demonstrate an entitlement to equitable tolling of a limitations period, Petitioner must satisfy both parts of the two-prong test outlined in *Menominee Indian Tribe*. *See*

24

*supra* Applicable Legal Standards Section II; *Menominee Indian Tribe*, 577 U.S. at 255–57. Specifically, a party seeking application of equitable tolling has the burden of proving that (i) he diligently pursued his rights, and (ii) some extraordinary circumstance(s) beyond his control prevented timely filing. *Id.* at 255. Failure to demonstrate either part of this test precludes application of equitable tolling. *Id.* at 256 ("[W]e have treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other."). Such is the case in Petitioner's Motion for Review: it fails prong one of the equitable tolling test. Specifically, the facts Petitioner alleges fail to reflect that Petitioner diligently pursued her rights between August 2020 and mid-February 2021, the period during which she claims to have experienced extraordinary circumstances. *See* Pet'r Memo at 5, 14; *see generally* Attorney Affidavit. Further, even if Petitioner could prove diligence, she cannot meet prong two of the equitable tolling test, as the facts as alleged by Petitioner's counsel fail to meet the *Menominee Indian Tribe* test for extraordinary circumstances. *See* 577 U.S. at 255–57.

## I.      Diligence

The diligence prong of the equitable tolling inquiry addresses "affairs within the litigant's control," and assesses the actions a party takes to preserve his rights to a claim. *Menominee Indian Tribe*, 577 U.S. at 257. Whether a party has exercised the necessary level of diligence to warrant equitable tolling is a fact-specific inquiry that considers the party's circumstances during the relevant period. *See, e.g.*, *K.G.*, 951 F.3d at 1382 ("It is possible, for instance, that a reasonable amount of diligence for an individual with memory loss or hallucinations would equate to no diligence for an able-minded individual."). As the diligence inquiry is fact-dependent, there is no hard line specifying what conduct or actions universally constitute a diligent pursuit of a party's

rights.  *See, e.g.*, *Former Emps. of Sonoco Prods. Co. v. Chao,* 372 F.3d 1291, 1300 (Fed. Cir. 2004) ("We do not suggest that the high level of activity described in [another case] represents the minimum required for a finding of due diligence.").  However, Supreme Court and Federal Circuit cases that address equitable tolling counsel that, to demonstrate diligence, a party must show he "exercise[d] due diligence in preserving [his] legal rights," despite any interference or complications caused by outside sources.  *Irwin*, 498 U.S. at 96; *Leonard v. Gober*, 223 F.3d 1374, 1376 (Fed. Cir. 2000) ("However, courts are less likely to toll the limitations period when the filing is late and 'the claimant failed to exercise due diligence in preserving his legal rights.'") (quoting *Irwin*, 498 U.S. at 96); *see, e.g.*, *McDonald*, 819 F.3d at 1355 (finding no diligence where plaintiff failed to confirm her attorney was prosecuting the claim when plaintiff had reason to suspect otherwise).  In this case, Petitioner's Memorandum and the provided Attorney Affidavit[9] reflect a series of unfortunate circumstances which befell Petitioner's counsel during the period from August 2020 to mid-February 2021, and which allegedly prevented timely filing of the Petition. *See* Pet'r Memo at 2–8, 12–18; *see generally* Attorney Affidavit.  After review of the record, it is evident that the facts reflecting Petitioner's and counsel's conduct during the tolling period fail to demonstrate diligence required to preserve Petitioner's claim under the Vaccine Act.

A.     **Petitioner's Conduct**

This Court first considers whether, apart from her counsel, Petitioner's conduct demonstrates a diligent pursuit of her rights as required under the *Menominee Indian Tribe* diligence prong for equitable tolling.  *Menominee Indian Tribe*, 577 U.S. at 255–57.  Petitioner

---

[9] Though Petitioner's counsel did not file an Attorney Affidavit with his current Motion or Memorandum before this Court, he filed an Attorney Affidavit with his Supplemental Brief before the Special Master.  *See generally* Attorney Affidavit (ECF No. 25-1).  Accordingly, this Court considers the Attorney Affidavit, as it is contained in the record.

offers no evidence, in either her Supplemental Brief before the Special Master or in her Memorandum before this Court, of any actions she personally undertook during the period of extraordinary circumstances to pursue a vaccine claim as the legal representative of Mr. Giaccio's estate. *See* Pet'r Supp. at 2–8, 11–14, 16–19; Pet'r Memo at 2–8, 12–19. Instead, all facts purporting to address diligence in Petitioner's Memorandum focus solely on the actions of counsel. *See* Attorney Affidavit; Pet'r Supp. 3–20; Pet'r Memo at 4–19; *see supra* Background Sections II and III; *see infra* Discussion Section I.B. As noted, the actions of a party's counsel are attributed to that party through principles of agency law, absent evidence of attorney abandonment. *See Irwin*, 498 U.S. at 92 ("[U]nder our system of representative litigation, 'each party is deemed bound by the acts of his lawyer-agent.'") (internal citations omitted); *McDonald*, 819 F.3d at 1352 ("[A] client cannot be charged with the acts or omissions of an attorney who has abandoned him.").

Petitioner has failed to demonstrate any reason why this Court should not attribute counsel's conduct to Petitioner under principles of agency law. *See Irwin*, 498 U.S. at 92; *McDonald*, 819 F.3d at 1352. Indeed, Petitioner does not argue attorney abandonment[10] as a ground for equitable tolling in either her Supplemental Brief before the Special Master or her Motion and Memorandum before this Court.[11] *See* Pet'r Supp; Mot.; Pet'r Memo. Nor does the record reflect evidence of Petitioner's conduct in prosecuting the claim. The record is further silent as to any correspondence that occurred between Petitioner and counsel during the period of alleged extraordinary circumstances. *See* Pet'r Supp.; Mot.; Pet'r Memo. Yet, the nature and regularity

---

[10] *See supra* note 8.

[11] Respondent first raised the issue of attorney abandonment in his Response to Petitioner's Supplemental Brief and again in his Response to Petitioner's Motion for Review. *See* Resp.'s Supp. at 4; Resp. at 10. The Special Master, too, considered attorney abandonment in her Decision, albeit briefly. *See Falzon*, 2022 WL 6616721, at *5. Petitioner has never raised or addressed the attorney abandonment issue.

of communications between a client and her attorney can often reveal the availability of an attorney abandonment claim. *See, e.g.*, *Holland*, 560 U.S. at 652 (asserting that an attorney who "failed to communicate with his client over a period of years, despite various pleas from [the client] that [the attorney] respond to [the client's] letters," might raise concerns over attorney abandonment). The Federal Circuit has also indicated that reasonable diligence under an attorney abandonment claim minimally requires proof of some communication by the client to confirm his attorney is working to timely file. *See, e.g.*, *McDonald*, 819 F.3d at 1355 ("[The client's] failure to confirm that [the attorney] would be acting on her behalf and that she had filed a notice of appeal precludes a finding of reasonable diligence."). Petitioner provided no such evidence.

Limited by the record before it, this Court must instead assess whether Petitioner meets the equitable tolling diligence prong by considering whether her counsel, as Petitioner's agent, "exercise[d] due diligence in preserving [Petitioner's] legal rights." *Irwin*, 498 U.S. at 96.

### B.    Counsel's Conduct

Counsel's conduct during the period of alleged extraordinary circumstances does not reflect a diligent pursuit of Petitioner's rights under the Vaccine Act. Petitioner's Memorandum includes repeated assertions that counsel worked diligently to prosecute the case, despite the asserted extraordinary circumstances. *See, e.g.*, Pet'r Memo at 5 ("[G]iven the extraordinary circumstances cause[d] by the Covid 19, once in 100 years Pandemic, and diligent efforts to try to file the petition during these extraordinary circumstances, counsel respectfully asks the court if the Doctrine of Equitable tolling of the statute might apply."), 8 ("In the 4 months following the statute [of limitations deadline], counsel did everything within in [sic] his power to diligently pursue filing the petition, while battling office Covid 19, personally and professionally with his staff."), 11 ("Petitioner further alleges counsel diligently pursued the matter under these extraordinary circumstances to file the petition in March 2021."), 19 ("Despite diligent efforts to file the petition,

counsel filed the petition 4 months following the statute after returning to the office from battling Covid personally and among his office staff."). However, other than through attorney argument in the brief, Petitioner and her counsel offer only limited evidence regarding the specific conduct in which counsel purports to have engaged during this period.[12]

Far from establishing that diligent work occurred on Petitioner's case, the Memorandum demonstrates that counsel prioritized other cases over Petitioner's claim. *See, e.g.*, Pet'r Memo at 6–7; Attorney Affidavit ¶¶ 9, 11. For example, the same week in October 2020 during which Petitioner's counsel declined to perform research on Petitioner's case requested by Dr. Stern, counsel instead "juggl[ed] 6 Social Security telephone hearings and appointments." Pet'r Memo at 6; *see* Attorney Affidavit ¶ 11 ("On October 8, 2020, Dr. Stern emailed [counsel] wanting [counsel] to review 189 death cases filed in the vaccine court. . . . [Counsel] could not immediately do so. [Counsel] responded on October 9, 2020 alerting her to [his] situation."). Petitioner also asserts that counsel had to "scramble[e] to cover 16 Social Security Disability hearings between

---

[12] Petitioner retained counsel to pursue her claim under the Vaccine Act as early as June 2019, approximately seventeen months in advance of the November 19, 2020 filing deadline. Pet'r Memo at 2. Accordingly, this is not a case in which counsel was retained just before the statute of limitations deadline. However, the record includes no indication whether counsel diligently pursued Petitioner's claim between his retention in June 2019 and August 1, 2020, the date upon which his alleged extraordinary circumstances began. *See* Attorney Affidavit ¶ 3; Pet'r Memo at 14. What is clear is that Petitioner's counsel had many months to investigate Petitioner's claim before any health or personal complications arose. However, as the Federal Circuit has cabined the diligence inquiry to during the period of extraordinary circumstances only, *see Checo*, 748 F.3d at 1379–80, this Court does not consider counsel's actions during this period as part of the equitable tolling analysis. While not relevant to the Federal Circuit's equitable tolling analysis, the Court notes that other courts do not appear to cabin their diligence inquiry to only periods of extraordinary circumstances, but rather look to the entire statute of limitations period. *See, e.g.*, *Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (finding plaintiff "failed to meet the due diligence requirement for equitable tolling" by looking to actions taken by him and his attorney "prior to expiration of the . . . statute of limitations"); *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1134–35 (D.C. Cir. 2015) (discussing filing a protective claim during the statute of limitations period as indicative of diligence, without regard to whether such action is taken specifically during a period of extraordinary circumstance).

October 19, 2020 and November 9, 2020 upon his return to the office." Pet'r Memo at 6. Counsel opted to prioritize these other cases over Petitioner's claim, even though at the time, the statute of limitations had not yet run on Petitioner's claim. *See* Pet'r Memo at 16 (noting "the statute ran on November 19th, 2020"). Such a choice by counsel does not reflect a diligent effort to preserve Petitioner's rights. *See Irwin*, 498 U.S. at 96.

Indeed, the *only* specific evidence Petitioner offers to demonstrate diligent work on Petitioner's case relates to counsel's periodic correspondence with Dr. Stern regarding her pending expert report. *See* Pet'r Memo at 4–8; Attorney Affidavit ¶¶ 10–22. Petitioner and her counsel contend that evidence of counsel's correspondence with Dr. Stern "demonstrate[s] that counsel did in fact diligently try to move the case forward to the best of his limited ability." Pet'r Memo at 18. However, counsel's decision to wait for Dr. Stern's expert report prior to filing the Petition does not present a reasonably diligent pursuit of Petitioner's rights, as Petitioner's counsel did not need to obtain such a report prior to filing the Petition. Neither the Vaccine Act nor this Court's Vaccine Rules require petitioners to file an expert report to accompany a petition for compensation based on vaccines listed on the Vaccine Injury Table. *See, e.g.*, 42 U.S.C. § 300aa-11(c) (describing a Petition's required contents upon filing, which do not include expert reports); Vaccine Rule 2(c)(2) (same). Furthermore, parties frequently perfect or supplement their claims by filing expert reports to help prove causation after they have already filed their initial Petitions. *See, e.g.*, *Simanski v. Sec'y of Health & Hum. Servs.*, 671 F.3d 1368, 1371–72 (Fed. Cir. 2012) ("[Petitioners] filed their petition for compensation due to [the party's] injuries, [and] the petition was assigned to a special master. After several periods of delay, [Petitioners] ultimately perfected their petition by submitting . . . reports from two medical experts in support of their claim."); *Andreu ex rel. Andreu v. Sec'y of Dep't of Health & Hum. Servs.*, 569 F.3d 1367, 1371 (Fed. Cir.

2009) ("[Petitioners] initiated their Vaccine Act claim on October 26, 1998 . . . . On November 28, 2005, [Petitioners] filed an expert report from Carlo Tornatore, M.D., a neurologist.").  Thus, counsel's efforts to procure an expert report at this point in the litigation were unnecessary and do not demonstrate a diligent effort to preserve Petitioner's legal rights.

Petitioner defends counsel's decision to pursue Dr. Stern's report prior to filing her Petition by noting counsel was "unsure of whether a meritorious claim even existed in the absence of a report from the expert and did not want to file a frivolous claim."  Pet'r Memo at 18.  The Court appreciates that counsel sought to avoid filing a frivolous claim.  However, based on the record before this Court, counsel's concerns over potential frivolity were mollified as early as November 4, 2020, when counsel and Dr. Stern came to "a meeting of the minds about what an expert letter from [Dr. Stern] might contain" during their conference call.  Pet'r Supp. at 15; *see also* Attorney Affidavit ¶ 12.  Indeed, Petitioner and her counsel filed the Petition despite never receiving an expert report from Dr. Stern, or any other expert.  *See* Pet'r Memo at 4–5 ("It became clear Dr. Stern had been ill herself and would not be able to provide a concrete report on her investigation immediately up[on] counsel's return.  Counsel therefore filed the petition without it on March 18, 2021."); *see also* Attorney Affidavit ¶¶ 21–22; *Falzon*, 2022 WL 6616721, at *5 ("In fact, [Petitioner] ultimately filed her petition without a report from Dr. Stern.").  The Petition, once filed, acknowledged that Dr. Stern's "opinion should be forthcoming," offered a tentative prediction of what Dr. Stern's research would show, and referenced a 2014 clinical review on streptococcal necrotizing myositis.  Pet. ¶ 6.  While "[a] petitioner must provide a reputable medical or scientific explanation for causation that pertains specifically to the petitioner's case," such an explanation "need only be 'legally probable, not medically or scientifically certain,'" and the underlying expert report need not be presented immediately upon filing the petition.  *Moberly*

*v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1322 (Fed. Cir. 2010) (quoting *Knudsen v. Sec'y of Health & Hum. Servs.*, 35 F.3d 543, 548–49 (Fed. Cir. 1994); *see, e.g.*, *Andreu*, 569 F.3d at 1371.

As noted, the nature of the information required to be disclosed in the Petition is straightforward. Petitioner has not alleged any facts to suggest there were issues in obtaining the attachments required under the Vaccine Rules to accompany the Petition upon filing, such as the decedent's medical records. *See* Vaccine Rule 2(c). Further, counsel averred that after his November 4, 2020 conference call with Dr. Stern, he understood "what an expert letter from [Dr. Stern] might contain" and accordingly had sufficient information to file a Petition that would not be frivolous. Pet'r Supp at 15; *see also* Attorney Affidavit ¶ 12. This conference call took place over two weeks before November 19, 2020, the statutory deadline for filing the Petition. *See* Pet'r Memo at 16 (noting "the statute ran on November 19th, 2020"). Thus, filing the Petition at this point was not only possible, but also would have avoided any statute of limitations issues entirely. Instead of filing the Petition, however, counsel continued to pursue Dr. Stern's then-unnecessary formal expert report.

That the Petition could be filed without an accompanying expert report or formal analysis attached underscores the incongruity of counsel's argument that he "did everything within in [sic] his power to diligently pursue filing the petition" by continuing correspondence with Dr. Stern. Pet'r Memo at 8. Indeed, continuing to prioritize correspondence with Dr. Stern regarding her expert report caused Petitioner to violate the statute of limitations and further elongated the requested equitable tolling period. It also forced Petitioner to rely on equitable tolling — a doctrine that both the Supreme Court and Federal Circuit have emphasized must be applied "sparingly" — as the only means of preserving Petitioner's rights under the Vaccine Act. *Cloer*, 654 F.3d at

1344–45 (citing *Irwin*, 498 U.S. at 96).  Thus, faced with the choice between filing a timely petition without an unnecessary expert report or filing an untimely petition accompanied by an unnecessary expert report, a diligent pursuit to preserve Petitioner's rights required counsel to choose the former.  Instead, counsel's choice runs counter to notions of a diligent pursuit of Petitioner's rights, as it does not prioritize the preservation of Petitioner's claim.  *See Irwin*, 498 U.S. at 96.

Counsel's conduct is the only evidence in the record available to the Court that is pertinent to the diligence inquiry, and this Court considers such evidence insufficient to meet the diligence prong.  Counsel's conduct is most aptly characterized as "garden variety excusable neglect" for which equitable tolling is an inappropriate remedy.  *Holland*, 560 U.S. at 651–52 (quoting *Irwin*, 498 U.S. at 96); *see McDonald*, 819 F.3d at 1351 ("[A]ttorney negligence is not sufficient to justify equitable tolling.  To the contrary, the client is normally responsible for the malfeasance of the attorney, and in such cases has a malpractice remedy, not a tolling remedy.").  Accordingly, this Court holds that Petitioner's conduct during the period between August 2020 and mid-February 2021, attributable to her through her counsel, fails to demonstrate a diligent pursuit to preserve her rights.

## II.    Extraordinary Circumstances

This Court need not reach the second question of whether the events alleged by Petitioner qualify as "extraordinary circumstances" under *Menominee Indian Tribe*, as Petitioner's failure to diligently pursue her rights alone precludes application of equitable tolling.  *See Menominee Indian Tribe*, 577 U.S. at 255.  Nevertheless, for completeness this Court addresses Petitioner's allegations under the "extraordinary circumstances" prong of the equitable tolling test.  *See id.* at 255–57.  Even assuming, *arguendo*, that Petitioner could sufficiently demonstrate diligence during the full requested tolling period, her Petition would still be considered untimely filed because the

record does not demonstrate that Petitioner experienced extraordinary circumstances sufficient to meet the full 119-day tolling period.

As noted, under the second prong of the *Menominee Indian Tribe* analysis, a party seeking equitable tolling must demonstrate "that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 560 U.S. at 649); *see supra* Applicable Legal Standards Section II.  Such circumstances must be "both extraordinary *and* beyond [a party's] control." *Menominee Indian Tribe*, 577 U.S. at 256 (emphasis in original).  Under the "stop-clock" approach endorsed by the Federal Circuit, a party must demonstrate that the extraordinary circumstances lasted for at least the same number of days as between the statute of limitations deadline and the filing date (*i.e.*, the tolling period).  *Checo*, 748 F.3d at 1379.

The extraordinary circumstances that Petitioner alleges prevented her from timely filing the Petition primarily impacted her counsel and his ability to prosecute Petitioner's case.  *See* Pet'r Memo at 2–8, 12–20; *see generally* Attorney Affidavit.  Specifically, Petitioner asserts that counsel's responsibilities in caring for his late father and administering his father's estate inhibited counsel's ability to adequately pursue Petitioner's claim from August 1, 2020 until October 5, 2020, the date on which counsel returned to work.  Pet'r Memo at 3–6; *see also* Attorney Affidavit ¶¶ 8–9.  Counsel also experienced his own health issues which caused him to miss work for several days, including a colonoscopy on November 9, 2020, stomach pain on November 13, 2020, and a severe case of COVID-19 from December 31, 2020 through mid-February 2021.[13]  Attorney

---

[13] The Special Master's Decision states that the period of delay associated with counsel's COVID-19 diagnosis occurred between December 31, 2020 and February 1, 2021.  *See Falzon*, 2022 WL 6616721, at *4.  Such an estimate corresponds with Petitioner's Memorandum, which states that "[o]n December 31, 2020, counsel and his wife both contracted Covid 19.  Unfortunately, counsel developed bilateral viral pneumonia, missing the entire month of January [and] returning to work in poor health in February 2021."  Pet'r Memo at 4; *see also* Attorney Affidavit ¶ 18.  However, the Memorandum also states that counsel was "significantly incapacitated to part time work

Affidavit ¶¶ 13, 18; Pet'r Memo at 6–7, 17.  Petitioner also references illnesses affecting several members of counsel's staff for the tardy filing, including the three-week period from November 17, 2020 until approximately December 8, 2020 when one of counsel's paralegals became ill with COVID-19.  Attorney Affidavit ¶¶ 14–16; Pet'r Memo at 4, 6–7.  In addition to staff illness, Petitioner argues the six-week illness of Petitioner's medical expert, Dr. Stern, due to an adverse reaction to dental anesthesia, impeded the timely filing of the Petition from December 2020 until mid-January 2021.  Pet'r Memo at 4, 7–8; Attorney Affidavit ¶ 18.  Finally, Petitioner's counsel alleges that during the periods from October 5 through October 9, 2020, and from October 19 through November 9, 2020, counsel had conflicting legal matters that prevented him from timely completing and filing the Petition.  Attorney Affidavit ¶ 9; Pet'r Memo at 6.  Considering each of the circumstances as reflected in the record, this Court holds that Petitioner has failed to establish such circumstances were sufficiently "extraordinary" to account for the full, 119-day tolling period and warrant application of equitable tolling.[14]

---

through mid February 2021" due to his remaining COVID-19 symptoms.  *Id.* at 17.  Thus, Petitioner alleges the full period of extraordinary circumstances ended in mid-February 2021.  *See id.* at 5, 14 ("[T]he 'period of extraordinary circumstances' in question in this case runs from August 1, 2020 until mid February 2021 . . . .").  Therefore, affording the most generous estimate of the full delay attributable to counsel's COVID-19 diagnosis, this Court will consider counsel's COVID-19 illness period as extending the additional 13 days, from December 31, 2020 to February 14, 2021.

[14] Petitioner's Memorandum repeatedly attempts to analogize between claims of a petitioner's mental incapacitation considered in *K.G. v. Secretary of Health and Human Services*, 951 F.3d 1374 (Fed. Cir. 2020), and the alleged incapacitation of Petitioner's counsel present in this case.  *See, e.g.*, Pet'r Memo at 8, 10–11 ("***K.G.*** presented a new issue to this Court in the context of equitable tolling for mental incapacitation of the petitioner.  This case similar[ly] presents a novel issue of the incapacitation of counsel . . . .") (emphasis in original).  The comparison is unavailing.  The central question raised in *K.G.* addressed whether a petitioner's mental incapacitation may constitute an extraordinary circumstance for the purposes of equitable tolling, a question that the Federal Circuit decided in the affirmative.  *See K.G.*, 951 F.3d at 1381 ("Thus, we hold that equitable tolling on the basis of mental incompetence is available in Vaccine Act cases.").  However, Petitioner's mental incapacitation is not at issue in this case.  Instead, Petitioner alleges

### A.   Dr. Stern's Six-Week Illness

This Court need not devote substantial discussion to whether Dr. Stern's illness constitutes an extraordinary circumstance for equitable tolling purposes, as Petitioner's counsel has already conceded it does not.  *See* Pet'r Memo at 18 ("Counsel agrees with the Special Master that the incapacitation of the retained expert witness is not sufficient ground for equitable tolling filing beyond the statute.").   Indeed, extraordinary circumstances are circumstances beyond a party's control, or "external obstacle[s]," that "stood in [a party's] way and prevented timely filing." *Menominee Indian Tribe*, 577 U.S. at 255–57.   While Petitioner certainly could not have controlled the fact that Dr. Stern experienced an adverse reaction to dental anesthesia, causing her to be sick for six weeks between December 2020 and mid-January 2021, Dr. Stern's illness need not have "stood in [Petitioner's counsel's] way and prevented timely filing."  *Id.*; *see* Attorney Affidavit ¶ 18.   As discussed above, Petitioner was not required to obtain Dr. Stern's formal expert report prior to filing the Petition.  *See supra* Discussion Section I.B.   Further, Petitioner had acquired a preliminary understanding of Dr. Stern's findings regarding Petitioner's merits case by November 4, 2020, prior to the November 19, 2020 statute of limitations deadline.  *See id.*; Pet'r Supp. at 15.

---

circumstances, including physical illness, that directly impacted Petitioner's counsel, rather than Petitioner herself.   Further, in *K.G.*, the Federal Circuit rationalized its decision to extend the treatment of mental incapacitation as an extraordinary circumstance to the Vaccine Act context by acknowledging that the Federal Circuit had already condoned such a practice within the context of cases arising out of the U.S. Court of Appeals for Veterans Claims.  *See K.G.*, 951 F.3d at 1380 ("Although we have not previously addressed whether equitable tolling based on mental incapacity is available under the Vaccine Act, we have found mental incapacity is a sufficient basis for equitable tolling in the veterans' benefits context.") (citing *Barrett v. Principi*, 363 F.3d 1316, 1318 (Fed. Cir. 2004)).   Petitioner has not identified, and this Court could not identify, any comparable Federal Circuit cases that have allowed circumstances impacting only a petitioner's counsel to qualify for equitable tolling.   Finally, to the extent Petitioner insinuates the Federal Circuit in *K.G.* applied equitable tolling to the facts in K.G.'s case, such a suggestion is incorrect. The Federal Circuit merely held that equitable tolling due to mental incompetence is available under the Vaccine Act.  *K.G.*, 951 F.3d at 1381.   The court then vacated and remanded the case to determine whether equitable tolling should be specifically applied to K.G.'s case.  *Id.* at 1382.

Therefore, as Petitioner acknowledges, Dr. Stern's illness nearly a month later, from December 2020 to mid-January 2021, should not have prevented the filing of the Petition and cannot be considered an extraordinary circumstance for the purposes of equitable tolling here.  Pet'r Memo at 18; *see also Falzon*, 2022 WL 6616721, at \*5 (holding the same).

### B.        Counsel's Other Professional Conflicts

Petitioner next argues that certain other professional engagements prevented counsel from timely pursuing and filing the Petition.  Specifically, counsel identified six Social Security hearings he attended during the week of October 5–9, 2020, and sixteen Social Security disability hearings he attended between October 19, 2020 and November 9, 2020.  Pet'r Memo at 6; Attorney Affidavit ¶ 9.  However, as the Special Master observed, "the prioritization of one case over another does not constitute an extraordinary circumstance." *Falzon*, 2022 WL 6616721, at \*5; *see also Sparre v. U.S. States Dep't of Lab.,* 924 F.3d 398, 404 (7th Cir. 2019) ("Even when taken together, the instances of [attorney] neglect here (mistakenly assuming the filing deadline was 30 days instead of 14, missing the deadline due to travel, medical reasons, or being 'busy with other matters,' not expecting the ALJ's decision to issue over a holiday), are 'nothing but ordinary' and do not add up to an extraordinary circumstance.") (quoting *Carpenter v. Douma*, 840 F.3d 867, 872 (7th Cir. 2016)).  Indeed, the decision to prioritize these Social Security hearings over working on Petitioner's claim was a choice within counsel's control, and the extraordinary circumstances prong "is meant to cover matters outside [a party's] control." *Menominee Indian Tribe*, 577 U.S. at 257.  It is well-established that a party cannot claim that "equitable tolling [should be] available when a litigant was responsible for [his] *own* delay." *Id.* at 256–57 (emphasis in original). Accordingly, Petitioner's insinuation that work engagements completed in advance of the November 19, 2020 statute of limitations deadline should excuse the tardy filing falls flat.  Pet'r

Memo at 6; Attorney Affidavit ¶ 9.  Such events neither "stood in [Petitioner's] way [nor] prevented timely filing," and they were not "beyond [Petitioner's] control."  *Menominee Indian Tribe*, 577 U.S. at 255–57.  Therefore, the Social Security hearings that took place between October 5, 2020 and November 9, 2020 do not qualify as extraordinary circumstances for purposes of equitable tolling.

### C.    Staff Members' COVID-19 Diagnoses

Petitioner's Memorandum also asserts that certain staff illnesses substantially burdened counsel's ability to file Petitioner's claim in a timely fashion.  Pet'r Memo at 4, 6–7, 16; Attorney Affidavit ¶¶ 14–16.  Petitioner highlights that for the three-week period following a diagnosis of COVID-19 on November 17, 2020, counsel's paralegal was house-bound with severe COVID-19 symptoms.  Pet'r Memo at 4, 6–7; Attorney Affidavit ¶¶ 14–16.  Counsel reports that his firm was forced to allocate the ill paralegal's usual tasks to the firm's other members, causing delays due to the specialized duties that each member of the firm ordinarily undertook.  Pet'r Memo at 4, 6–7. The office also instituted a staggered in-office work schedule to minimize exposure to COVID-19, which Petitioner alleges further negatively impacted workflow for the already lean law firm. Pet'r Memo at 7, 16; Attorney Affidavit ¶¶ 14–16.  Despite these efforts, another attorney and staff member also contracted COVID-19 during this same period.  Pet'r Memo at 7, 16; Attorney Affidavit ¶¶ 14–16.

Like the Special Master, this Court is unpersuaded that the illness of counsel's paralegal and other firm members constitutes an extraordinary circumstance that merits equitable tolling. *See Falzon*, 2022 WL 6616721, at *5.  Undoubtedly, counsel experienced added professional pressure because of these staff illnesses, as counsel's firm is small, with three attorneys and five support staff.  Pet'r Memo at 4, 6–7.  Although the absence of staff may have, as Petitioner asserts,

"created chaos in the office trying to keep all the office demands under control," *id.* at 4, it remains unclear from the record why such circumstances should have "stood in [Petitioner's] way and prevented timely filing" of the Petition. *Menominee Indian Tribe*, 577 U.S. at 255 (internal quotation marks omitted) (quoting *Holland*, 560 U.S. at 649). The record suggests that counsel himself remained healthy and working during this period of staff illness, as did another co-counsel. Attorney Affidavit ¶¶ 16–18. Counsel himself became ill from COVID-19 on December 31, 2020, several weeks after his paralegal had returned to work on approximately December 8, 2020. Pet'r Memo at 4, 6–7, 17; Attorney Affidavit ¶¶ 16, 18. The record lacks any suggestion that counsel could not continue working from home on Petitioner's matter between November 17, 2020 and December 31, 2020, while under the staggered in-office COVID-19 work schedule imposed on November 17, 2020.[15] Indeed, counsel continued his correspondence with Dr. Stern during this period. *See, e.g.*, Attorney Affidavit ¶ 17 ("In December 2020, [counsel] did review the cases Dr. Stern sent and responded to her on December 11, 2020."). As counsel himself acknowledged, he is the only member of his firm with "any experience before the Vaccine Court," and is the only member of his firm admitted to the U.S. Court of Federal Claims bar. Pet'r Memo at 14. Given

---

[15] It appears that the Federal Circuit has not yet considered whether the impact of safety protocols instituted under the COVID-19 pandemic can, alone, justify equitable tolling of a statute of limitations. As the Special Master identified, however, courts outside of the Federal Circuit that have considered the issue have acknowledged that the effects of the COVID-19 pandemic do not, standing alone, constitute an extraordinary circumstance that would warrant equitable tolling. *See, e.g.*, *Powell v. United States*, No. 21-12432-J, 2022 WL 2811987, *1 (11th Cir. Feb. 8, 2022) (noting, within the context of AEDPA's statute of limitations, that prison "lockdowns and similar limitations imposed because of the COVID-19 pandemic were not extraordinary circumstances which by themselves justify equitable tolling" to excuse a federal prisoner's tardy filing); *Lamebull v. City & Cnty. of Denver*, No. 22-1009, 2022 WL 2951689, *2 (10th Cir. July 26, 2022) (refusing to acknowledge "COVID related restrictions" as an extraordinary circumstance which would excuse a prisoner's non-diligent pursuit of his rights); *see also Smith v. United States*, 156 Fed. Cl. 471, 484–85 (2021) ("Plaintiff points to delays caused by the COVID-19 pandemic and Defendant's difficulties in obtaining the requested information . . . . Though the Court is sympathetic to Plaintiff's request, it declines to equitably toll the limitation period here.").

these limitations, coupled with his role as counsel of record on the matter, the responsibility lay with counsel to timely file the Petition, not his paralegal.  Indeed, as discussed above, counsel could have filed the Petition at any point after his conference with Dr. Stern on November 4, 2020, far before any staff illnesses would have interfered with office workflow.  *See supra* Discussion Section I.B; Pet'r Supp. at 15.   For all these reasons, the staff illnesses, as reflected in the record before this Court, cannot be said to have "prevented timely filing" of Petitioner's claim, and are therefore not extraordinary circumstances as contemplated by *Menominee Indian Tribe*.  577 U.S. at 255.

### D.    Counsel's Role as Caretaker for His Father and Personal Health Issues

Petitioner also argues the following circumstances were sufficiently extraordinary to warrant equitable tolling of the limitations period: (i) counsel's role as caretaker for his ailing father and administrator of his father's estate, and (ii) counsel's own health issues.  Specifically, counsel alleges that during the period from August 1, 2020 through October 4, 2021, counsel remained distracted from work while caring for his father, planning his father's funeral, and managing his father's estate.  Attorney Affidavit ¶¶ 3–9; Pet'r Memo at 3–6.  Additionally, Petitioner alleges that a series of personal illnesses prevented his ability to timely file the Petition: (i) counsel was absent from work on November 9, 2020 for a colonoscopy related to stomach issues experienced by counsel after his father's death; (ii) counsel was absent from work on November 13, 2020 due to stomach pain relating to the colonoscopy; and (iii) counsel was absent from work due to his COVID-19 diagnosis and symptoms from December 31, 2020 until approximately February 14, 2021.[16]  Attorney Affidavit ¶¶ 13, 18; Pet'r Memo at 6–7, 17.  Such circumstances total 113 days.

---

[16] *See supra* note 13.

As the Special Master determined below, this Court need not definitively opine on whether these circumstances would qualify as "extraordinary" under *Menominee Indian Tribe* because under the Federal Circuit's "stop-clock" approach for equitable tolling, the collective time associated with each such circumstance, totaling 113 days, would be insufficient to bridge the 119-day gap between the statute of limitations deadline and the Petition filing date. *Falzon*, 2022 WL 6616721, at *5 n.4; *see also Checo*, 748 F.3d at 1379. In other words, even if equitable tolling applied as to the 113 days described above, it is simply not a lengthy enough tolling period to excuse Petitioner's tardy filing under the applicable statute of limitations. As noted, Petitioner filed the Petition on March 18, 2021, or 119 days after the statute of limitations deadline on November 19, 2020. *See* Pet'r Memo at 8, 16; Resp. at 7. Therefore, under the "stop-clock" method, Petitioner must have demonstrated extraordinary circumstances that account for the full 119-day filing delay. *See Checo*, 748 F.3d at 1379. However, the time attributable to both counsel's father's illness and counsel's own health issues do not add up to the 119 days required to excuse Petitioner's tardy filing. Below is a chart which represents the period of delay associated with each alleged extraordinary circumstance.

| Extraordinary Circumstance | Start Date | End Date | Number of Days |
|---|---|---|---|
| Counsel's Father's Illness, Funeral, and Estate[17] | 8/1/2020[18] | 10/4/2020[19] | 65 |
| Counsel's COVID-19 Diagnosis and Symptoms[20] | 12/31/2020[21] | 2/14/2021[22] | 46 |
| Counsel's Colonoscopy/Related Absence from Work for Stomach Pain[23] | 11/9/2020[24] 11/13/2020[25] | 11/9/2020 11/13/2020 | 2 |
| Total | | | 113 |

In sum, assuming *arguendo* Petitioner could demonstrate diligence, and even if counsel's

role as caretaker and counsel's own health issues had constituted extraordinary circumstances, the

facts as reflected in a generous reading of the record collectively constitute 113 days of excusable

---

[17] *See* Attorney Affidavit ¶ 3 ("In early August 2020, [counsel's] father['s] . . . health began to rapidly decline."), ¶ 6 ("[Counsel] assisted in the care for his daily needs until his death."), ¶ 8 ("[Counsel] planned his [father's] funeral . . . ."), ¶ 9 ("[Counsel] returned to the office on October 5, 2020, where [counsel] spent the following week juggling the affairs of his [father's] estate . . . ."); Pet'r Memo at 3–6.

[18] *See* Attorney Affidavit ¶ 3 ("In early August 2020, [counsel's] father['s] . . . health began to rapidly decline."); Pet'r Memo at 5.

[19] *See* Attorney Affidavit ¶ 9 ("[Counsel] returned to the office on October 5, 2020. . . ."); Pet'r Memo at 6.

[20] *See* Attorney Affidavit ¶ 18 ("On December 31, 2020, [counsel] became ill with Covid. . . . [Counsel] missed the entire month of January, and returned to work in early February 2021 still feeling poorly . . . ."); Pet'r Memo at 7–8, 17 ("[C]ounsel's illness . . . left him completely incapacitated through January 2021, and significantly incapacitated to part time work through mid February 2021.").

[21] *See* Attorney Affidavit ¶ 18 ("On December 31, 2020, [counsel] became ill with Covid."); Pet'r Memo at 7–8, 17.

[22] *See supra* note 13; *see also* Pet'r Memo at 17 ("[C]ounsel's illness all through the month of January 2021 left him completely incapacitated through January 2021, and significantly incapacitated to part time work through mid February 2021.").

[23] *See* Attorney Affidavit ¶ 13 ("On November 9, 2020, [counsel's doctor] performed a colonoscopy on [counsel] for stomach issues [counsel] was having following [his] father's death. Additionally [counsel] missed November 13th because of stomach pain and illness."); Pet'r Memo at 6 ("Counsel under the stress developed stomach illness requiring a colonoscopy o[n] November 9, 2020, and [was] absent on November 13, 2020 due to stomach pain . . . .").

[24] *See* Attorney Affidavit ¶ 13 ("On November 9, 2020, [counsel's doctor] performed a colonoscopy on [counsel] . . . ."); Pet'r Memo at 6.

[25] *See* Attorney Affidavit ¶ 13 ("Additionally [counsel] missed November 13th because of stomach pain and illness."); Pet'r Memo at 6.

delay.  If this Court were to correspondingly toll the statute of limitations period for 113 days under the "stop-clock" method, Petitioner would have had to file her Petition by Friday, March 12, 2021 to meet the statute of limitations.  She did not.  Thus, even assuming diligence and that (i) counsel's responsibilities as caretaker for his ill father and administrator of the estate, and (ii) counsel's personal health complications, could both qualify as extraordinary circumstances, equitable tolling would nevertheless remain unavailable to excuse the Petitioner's untimely filing of her Petition for Compensation.  Thus, equitable tolling is not available to excuse Petitioner's untimely filing in this action, and the Special Master's holding to that end is in accordance with law.  *See Falzon*, 2022 WL 6616721, at *5.  While the Court laments that Petitioner will be unable to pursue her untimely claim under the Vaccine Act, the law mandates such a result.

**CONCLUSION**

Petitioner's Motion for Review (ECF No. 28) is **DENIED**.  The Special Master's Decision (ECF No. 27) is **SUSTAINED**.  The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

The parties are directed to **CONFER** and **FILE** a Notice within seven days of this Memorandum and Order, attaching a proposed public version of this Memorandum and Order, with any protected information redacted.


IT IS SO ORDERED.


*Eleni M. Roumel*
ELENI M. ROUMEL
Judge


January 23, 2023
Washington, D.C